R. M. NORMENT v. W. J. BROWN, Executor, and others.

*Referee—Scale—Evidence.*

1. Where the report of a referee does not state fully and distinctly his findings on the facts, so that his conclusions of law may be reviewed by the Court, the case will be remanded, in order that the defect may be supplied.

2. Payments on a note in Confederate money are to be credited at the nominal value of the currency paid, regardless of the fact that such payments were not endorsed on the note at the time.

3. Where it appeared that A who was indebted by note to B paid off and discharged, at the request of the latter, a debt due by him to C, it should have been found as a fact by the jury (or referee) whether or not the transaction was intended by the parties as an extinguishment *pro tanto* of the debt from A to B. The fact of the payment to C is in itself *some* evidence of such an intent.

(*Hall* v. *Craige*, 65 N. C. 51 ; *Walkup* v. *Houston*, Ib. 501 ; *Mercer* v. *Wiggins*, 74 N. C. 48 ; *McDowell* v. *Tate*, 1 Dev. 249 ; *Earp* v. *Richardson*, 75 N. C. 84, cited and approved.)

CIVIL ACTION tried at Fall Term, 1877, of ROBESON Superior Court, before *Seymour, J.*

This action is brought on a note not under seal, given by

Reuben King, the testator of defendant, to W. R. Bryan, for $803.04, on the 2nd of January, 1856, payable one day after date, and as a second canse of action, upon a bond made by King to Bryan on the 14th of February, 1857, for $1,000, payable one day after date. The defendant answered, (1) Both the note and bond have been paid. (2) As to the note not under seal, it is barred by the statute of limitations. (3) That he has counter-claims to both the note and the bond, which are described and numbered from 1 to 60, in a schedule attached to the answer. The plaintiff replied: The counter-claims are barred by the staute of limitations.

The case was by consent referred, the findings of the referee as to facts to be conclusive. The referee made a report in which he finds among other things not material to be here stated, (1) That the two notes sued on were made by King at their respective dates, and are as described. (2) That at the commencement of the action on the 16th of September, 1873, they were the property of the plaintiff, though he does not find at what date they were assigned to him. (3) That "there is no evidence of payment either on the bond or note sued on." By which we understand him to mean merely that no payments are endorsed on them, as there certainly is evidence from which payments might be inferred as will be seen. (4) Of the counter-claims pleaded, the referee finds that No. 54, which is a note for $4.74, dated 27th Sept., 1856, is barred by the statute of limitations. (5) No. 55, which he describes as "a payment by defendant Brown's testator of $100 to W. B. Bryan, on the 10th of July, 1863, "is *scaled* and allowed." (6) No. 56, which he in like manner describes as a payment of $25 made on the 9th of July, 1863, is *scaled* and allowed. (7) The counter-claim No. 60 is described as a judgment recovered at Spring Term, 1870, of Robeson Superior Court in favor of D. F. Edmond to the use of R. King v. W. R.

Bryan and John Moore for $322. It does not distinctly appear whether the referee finds this to be a good counter-claim or not. Apparently he does not deduct it from the sum which he finds owing by defendant independent of all counter-claims, while he does deduct Nos. 55 and 56 after scaling them. Why he declined to allow it, if he did de-cline, we can only conjecture. (8) The rest of the matters pleaded as counter-claims, consist of payments made by King of debts owing by Bryan to sundry persons, at the request of Bryan. The payments were made while Bryan held the notes sued on and it is said before April, 1869; but they must have been made before March, 1869, as King died early in that month, and his will was proved on the 10th of March.

The referee finds as conclusions of law, (1) That the note not under seal is barred by the statute of limitations. (2) That the counter-claims, except Nos. 54, 55, 56, and 60, are barred by the statute of limitations. (3) How he found as to counter-claims Nos. 54, 55, 56 and 60 has been stated above.

The defendant excepted to the report of the referee, (1) Because he found that the counter-claims, (except Nos. 54, 55, 56 and 60) were barred by the statute of limitations; whereas they had in fact been paid by King as the agent of Bryan; (2) Because the referee erred in finding that defendant was liable to judgment for any sum whatever.

The Judge overruled the first exception and "allowed" (sustained) the second, and referred the case back to the referee. He expressed the opinion that the matters pleaded as counter-claims (except as aforesaid) were not counter-claims, but payments, and consequently not affected by the statute of limitations. The plaintiff appealed from this judgment.

*Messrs. W. F. French* and *N. McLean*, for plaintiff.
*Mr. Giles Leitch*, for defendants.

RODMAN, J. (After stating the facts above.) In considering the questions which have been raised, it will be necessary to treat them in order; and it will be convenient to examine first the counter-claims excepted from the mass, and standing on their particular grounds:—

As to No. 54. If this is to be considered as a counter-claim, or more properly, a set-off, it is clearly barred by the statute; and as it is stated, and without any evidence other than the note itself furnishes tending to show that in the transaction in which it was given it was expressly or impliedly agreed that it was to be a payment on King's indebtedness, it is a set-off, and not a payment. On this point we agree with the referee. Though as will be seen, we think there is evidence upon which he might find it to be a payment.

Nos. 55 and 56, are similar, and may be dealt with together. The referee allowed these as payments, but *scaled* them, they having been made in 1863. If they had been endorsed on the notes, the decisions are that they were not subject to be scaled. *Hall* v. *Craige*, 65 N. C., 51 ; *Walkup* v. *Houston*, 65, N. C. 501; *Mercer* v. *Wiggins*, 74 N. C., 48; *Bervy* v. *Ballows*, 30, Ark. 198.

We can see no reason why their not being endorsed, but only evidenced by a receipt on a paper not attached to the notes—but it must be supposed in some way referring to them—can make any difference. If $100 in Confederate money was accepted as a payment of that sum, it was presumptively made a payment of *that sum* by the agreement of the parties, unless it appeared in some way that it was agreed that it should be taken only for its then value in gold. If these payments were properly allowed at all, they should have been allowed to the full amounts paid.

3. As to No. 60. We see no reason why the referee did not allow this judgment as a set off. We may suppose however that it was because the judgment was recovered in 1870, after Bryan had sold his interest in the notes sued on to the plaintiff. But the judgment does not show that the debt did not exist before it was rendered. In fact as the action was brought to the use of King, who died in March, 1869, he must have owned the debt sued for, while Bryan held the notes sued on in this action, which seems to have been until about April, 1869. As has been heretofore stated however the report does not expressly show what the referee did decide as to this claim, and we only gather his decision inferentially. The report is either defective or erroneous. Some part of it has apparently been omitted from the transcript to this Court.

4. The most important exception to the report is in respect to the manner in which the referee dealt with the other matters stated in the schedule. The answer alleged a payment of the notes sued on; and although the defendant afterwards scheduled the debts of Bryan which King had paid at Bryan's request, as counterclaims, we think he was not thereby precluded from insisting before the referee that they were in fact payments upon the notes, or one of them, which Bryan then held against King. It does not appear that this view was presented to the referee. He considers these payments for Bryan, as counterclaims, and as such, out of date, but does not except as may be inferred pass upon the question whether the payments *for* Bryan were or not intended, and agreed to be considered as payments *to* him. Of such an *express* agreement there was no evidence. But from the evidence before the referee, stated by him as facts, he *might* reasonably though he need not necessarily have inferred such an agreement, and the *fact* that the payments were payments on the debt sued on. Such an inference is not one of law which a Court can draw, but of fact

which a jury, and consequently a referee, acting instead of a jury, might draw or not, and was obliged to draw or reject, in finding on the issue of payment. For this doctrine *McDowell* v. *Tate*, 1 Dev., 249, is authority. To an action on a bond payable to plaintiff, the defendant offered in support of his plea of set off, an account against the plaintiff for $78, which the Judge held barred by the statute of limitations. The case came to this Court and it was held that the Judge below should have left it to the jury as evidence of a payment. HENDERSON, J., in an able opinion showed that the inference of payment was a reasonable one which the jury would have been justified in making from the nature of the transaction and the relation between the parties. To the same effect is *Dodge* v. *Swazey*, 35 Me., 535, where the Court having the power to find the facts, draw an inference of payment from facts similar to those in *McDowell* v. *Tate*. Had the referee found that there had been no payment on the notes sued on, we should have taken his finding as final. But he has not distinctly so found, and does not seem to have passed on that question, as the jury did not in *McDowell* v. *Tate*. In that case for the omission of the Judge to inform the jury that the evidence of the debt to the defendant might be considered in support of the plea of payment, a new trial was granted. In *Earp* v. *Richardson*, 75 N. C., 84. the finding of facts by the referee was so vague and scant that the Court could not intelligently review his conclusions of law, and the case was remanded in order that he might amend his report. We think that in this case the report should be remanded in order that the referee may pass distinctly on the question, whether King paid during his life any part, and if any, how much of the debt sued on, and that he may correct his report in respect to the payments made in July, 1863, which he scaled.

If the referee shall find that the payments made by King

.at the request of Bryan, were in fact payments upon the notes sued on, it is easy to see that interesting questions will arise as to the appropriations of the payments, and their effect in repelling the bar. of the statute. It is not our duty to anticipate these.

The order of the Judge below is affirmed, and the case remanded to the referee with directions to amend his report by finding such additional facts as will enable the Superior Court to decide intelligently upon his conclusions of law.

No Error.                    Affirmed and remanded.