THE SOUTHERN FERTILIZER CO. et al. v. H. A. REAMS et al.

*Insurance — Assignment — Equity — Finding of Facts by the Court — Supplementary Proceedings — Judgment — Creditor's Lien — Registration — Contract — Partnership.*

1. When, pursuant to the agreement of the parties, the Court finds the facts of a case, such findings are conclusive, subject to the exceptions—(1) that there was no evidence to support them; (2) that incompetent evidence was admitted; (3) or that some material fact or question was left out of consideration.

2. This Court will not review the finding of the Court below which was against the weight of the testimony.

3. An exception that the Court refused to *find* certain specified facts is not sufficient. The Court must have failed or refused to *pass upon or consider* such facts or questions arising therefrom.

4. Where, in supplementary proceedings, the judgment creditors of R. sought to subject the amount recovered by R.'s receiver in suits against certain insurance companies on account of loss by fire of some tobacco, which loss was payable to one M.: *Held*, that where such suits were brought to determine the *liabilities of the insurance companies solely*, and the other questions were left to be determined by these proceedings, the finding of the Court in those suits that R. was the sole owner of the tobacco was not an estoppel upon M., who was resisting the claims of the judgment creditors.

5. If M. had no technical insurable interest, only the insurance companies could avail themselves of it as a defence on account of such contracts being against public policy.

6. The plaintiffs—judgment creditors—having no lien on the tobacco and no interest in the insurance money recovered, must pursue their rights, if any, *in equity.*

7. A contingent assignment of an insurance policy, with the subsequent assent of the company, makes a new and valid contract with the *assignee*, and puts the legal title to the amount of the loss in him, and he may sue for it in his own name.

8. Even if the assignments of the insurance policies were made to secure indebtedness, they were not void as against plaintiffs for want of registration, where the assignor and assignee were partners.

9. Discussion by SHEPHERD, J., of what constitutes a partnership.

This was a Supplementary Proceeding, heard at the August Term, 1889, of ORANGE Superior Court, before *Gravıs, J.*

. The purpose was to subject certain moneys ($25,000) recov-ered in suits brought by the receiver of the defendant H. A. Reams, against some insurance companies, for loss resulting from burning some tobacco, and tried, after removal into the United States Circuit Court.

The plaintiffs in these proceedings are the judgment cred-itors of the defendant Reams, by judgments obtained prior to certain transactions between the defendant and one Eugene Morehead, by which he became indebted to More-head & Company for moneys advanced under a verbal agreement that Morehead would furnish the money to pay for tobacco, for handling, rents, and all expenses attached thereto; Reams was to purchase the tobacco, give it his per-sonal attention and time, then to take out insurance to secure Morehead & Company for the money furnished; when the tobacco was sold and closed out, the purchase money, with all expenses attached, was to be paid to him; then, if there was anything left, Reams was to have one-half for his services. Several policies of insurance were taken out and made payable, by subsequent assignment, with the assent of the companies, to "E. Morehead" and "Morehead & Co.," as their interest shall appear. The plaintiffs, judgment cred-itors of Reams, contended that the money recovered on the insurance policies stood in the place of the tobacco, in which Reams alone had an insurable interest, and that therefore they alone were entitled to have it subjected to their claims, and that Morehead was estopped to assert any interest therein.

The cases tried in the United States Court, consolidated in one, stated that a joint recovery was effected under an agreement that the rights of the parties to the cause should

be determined under the proceedings heretofore commenced, *i. e.*, these proceedings.

The following are the facts found by the Court and judgment thereupon:

1. The plaintiffs are creditors of H. A. Reams, who had reduced their debts to judgments in the Superior Court of Orange County. The amounts are shown on the records.

2. That the said judgments remain unsatisfied.

3. That plaintiffs instituted these proceedings, supplementary to the execution, against the defendant H. A. Reams.

4. These proceedings were, by order of this Court, consolidated.

5. That Eugene Morehead was made a party, and after his death his executrix was made a party to these proceedings.

6. That at the time of the transactions hereinafter stated, H. A. Reams and Eugene Morehead were residents of the county of Durham and of the town of Durham.

7. That Eugene Morehead carried on a banking business in the town of Durham from June, 1880, to January 2, 1884, under the name of " The Banking House of Eugene Morehead."

8. After January 2, 1884, the banking business was continued by Eugene Morehead and Gerrard S. Watts, of Baltimore, under the name of "The Banking House of Eugene Morehead & Co."

9. That Henry A. Reams failed in business and became insolvent, owing, in addition to the debts of plaintiffs in these proceedings, large debts to other parties, which are still unpaid; and was insolvent at the time of the purchases of the tobacco on which the receiver collected the insurance money which is sought to be subjected to the payment of plaintiffs' debts.

10. The purchases of tobacco were made in the name of H. A. Reams, under an agreement with the said Eugene Morehead, as follows: "Morehead would furnish the money to pay for the tobacco and for the handling, rents and expenses attached thereto, and Reams was to buy the tobacco, give it his personal attention and time, take out insurance on the tobacco for Morehead's benefit, as security to him for the money furnished; when the tobacco was sold and closed out, the purchase money and all expenses attached was to be paid to him; then, if there was anything left, Reams was to have one-half of it for and in consideration of his services. This arrangement was made prior to May, 1882, and to cover any losses Reams was to deposit $500. Afterwards, in November, 1883, Reams and Morehead had a reckoning, and thereafter Reams continued to buy under the same terms, except that he was not required to make any deposit to cover losses.

11. Purchases of tobacco were from time to time made by Reams and paid by drafts on the banking house of Eugene Morehead and Eugene Morehead & Co., a separate account being kept on the books in Reams' name.

12. Tobacco thus purchased was stored in Durham and policies of insurance were taken out—which policies, with all the other documents and changes therein, are made a part of this finding of fact and accompany his statement.

13. The tobacco in store at the time it was burned was purchased by H. A. Reams between November, 1883, and January, 1885, when the fire occurred.

14. There had been no levy of execution on the tobacco. That Henry A. Reams was in possession of the tobacco bought, and exercised the rights of absolute ownership over it, such as storing it in his own name, paying storage charges by his own check, selling and shipping in his own

name, receiving pay first and depositing the money received for it in bank to his credit.

15. That in the buying and selling of this tobacco neither Henry A. Reams or Eugene Morehead, nor Eugene Morehead & Co., ever gave any notice, either verbal or written, that said Reams was not carrying on the business for himself, or that he was not the absolute owner, except the matters contained in the several policies of insurance.

16. That from November, 1883, to January 2d, 1884, said Reams procured the money to pay for the tobacco bought by checking on the banking house of Eugene Morehead, which checks were paid and charged to the account of said Reams, and interest charged said Reams on over-drafts.

17. That after January 2d, 1884, said Reams obtained some of the funds used for purchasing the tobacco by discounting with the banking house of Eugene Morehead & Co. the notes of H. A. Reams and Eugene Morehead at from 8 to 12 per cent., and the net proceeds passed to the credit of H. A. Reams.

18. That said Reams also drew two drafts, each for $5,000, upon John S. Lockhart, payable to himself, which drafts were both accepted, and they were discounted at the banking house of Eugene Morehead & Co. at a rate from 8 to 10 per cent., and the net proceeds passed to the credit of H. A. Reams, and Reams checked the same out to pay for tobacco, etc.

19. That the nature of the transactions between said Reams and Eugene Morehead and Eugene Morehead & Co. was not made public, except as the same was entered on the bank books of the bank and on the policies of insurance.

20. That Eugene Morehead and Eugene Morehead & Co. allowed said Reams to hold himself out as the owner of the tobacco purchased by him, except so far as the nature of the business was disclosed by the books of the bank and the conditions of the policies of insurance.

21. That tobacco was insured in manner shown by the several insurance policies, herewith filed, with the knowledge of said Morehead.

22. That the premiums for such insurance were paid by checks on the banking house of Eugene Morehead or Eugene Morehead & Co.

23. That the policies of insurance were intended to be taken out as they were corrected by the consent of the companies; that these corrections were made at the request of H. A. Reams about the 22d November, 1884, by placing slips or writing on the face of the said policies, " Loss payable to Eugene Morehead"; " Loss, if any, payable to Eugene Morehead"; "Loss payable to Eugene Morehead, as his interest may appear"; and for a more definite statement of facts the policies are all filed as part of this statement of facts.

25. That there was no written contract signed by the parties between said Reams and Morehead.

26. That there was no registration of any of the policies, or of any conveyance or assignment thereof.

27. That the two drafts mentioned in 18th finding of facts shall be filed herewith as a part of this statement of facts.

28. That the sum in the hands of the receiver, W. W. Fuller, is about $25,000; that sums furnished by Eugene Morehead and Eugene Morehead & Co. are found to be about $28,000.

29. That the debt due T. B. Moseley, $231, has been paid.

The Court considers, upon the facts herein declared, and adjudges that the executrix of Eugene Morehead is entitled to have the funds now in the hands of the receiver, W. W. Fuller, or at least so much thereof as may be required to repay the money furnished by Eugene Morehead, or by the banking house of Eugene Morehead & Co., for which said Morehead is liable to said banking house of Eugene Morehead & Co. It is, therefore, ordered that the said receiver pay

over to the executrix of Eugene Morehead the sum to which she is declared to be entitled, if he can definitely ascertain the amount of account, and in case he cannot ascertain the amount so declared to be due to the said executrix, that then, and in that case, it be referred to the Clerk of the Superior Court of Orange County to ascertain what amount of money was furnished by Eugene Morehead and Eugene Morehead & Co. to pay for the tobacco insured, for which the receiver recovered, and when the amount is so ascertained, that the receiver pay over the same, or so much thereof as he may have funds to pay the executrix of Eugene Morehead, out of the money in his hands as receiver; and it is further ordered that the receiver report to the next term of this Court.

From which order the plaintiffs prayed an appeal, and assign as grounds of exception the following:

### TO THE TENTH FINDING OF FACT.

Because his Honor refused to find the facts as requested by plaintiffs, as follows:

That in addition to the interest charged H. A. Reams for the accommodation extended him by Eugene Morehead and by Eugene Morehead & Co., he paid to Eugene Morehead one-half of the profits arising from the tobacco sold, and was to pay him one-half of the profits arising from the sale of the tobacco on hand.

Because his Honor found that H. A. Reams was to have one-half of the net profits for and in consideration of his services, whereas he should have found that one-half of the net profits were to be paid by Reams to Eugene Morehead in addition to the interest reserved for the loan of the money, and after the firm of Eugene Morehead & Co. was established, then one-half of the net profits was to be paid by Reams to

105—19

Eugene Morehead for the use of his name in obtaining the money.

Because his Honor found as a fact that Reams was to take out insurance on the tobacco for Morehead's benefit as security to him for the money furnished, whereas he should have found that Reams was the sole and absolute owner of the tobacco, as appears by the policies of insurance set out in the record.

### TO THE EIGHTEENTH FINDING OF FACT.

Because his Honor did not find, as requested by the plaintiffs to do, that the proceeds of the two drafts for $5,000 each were placed to the individual credit of H. A. Reams, and that the said Reams checked upon the same to pay his individual expenses and for his own uses, as well as for the purchase of tobacco.

### TO THE TWENTY-SECOND FINDING OF FACT.

Because his Honor failed to find, as requested, the additional fact that the premiums for the insurance were paid by the individual check of Reams upon his individual account at the banking house of Eugene Morehead and Eugene Morehead & Co., respectively.

### TO THE TWENTY-THIRD FINDING OF FACT.

Because the evidence does not support the finding that the policies of insurance were intended to be taken out, as they were corrected, by the consent of the companies.

### TO THE TWENTY-FIFTH FINDING OF FACT.

Because his Honor should have found from the evidence that there was no written contract.

The plaintiffs further except because his Honor failed to find, as requested by them, that the slips were pasted upon the policies with the intent and for the purpose of securing a debt already in existence.

The plaintiffs further except to the conclusions of law, an order of his Honor, because he should have directed that so much of the money, in the hands of the receiver as is necessary for that purpose, should be paid to the plaintiffs in satisfaction of their debt.

*Messrs  J. B. Batchelor* and *John Devereux, Jr.,* for plaintiffs.
*Mr. W. A. Guthrie,* for defendants.

SHEPHERD, J.: Several exceptions are made by the plaintiffs to the findings of fact by the Court below, and it is insisted that these should now be reviewed by us.

It appears from the record that the parties agreed that the Judge should find the facts, and it is well settled that where such an agreement is made the findings are conclusive. *Cooper* v. *Middleton,* 94 N. C., 86; *Vaughan* v. *Lewellyn,* 94 N. C., 472; *Barbee* v. *Green,* 92 N. C., 471; *Battle* v. *Mayo,* 102 N. C., 413.

The only exceptions that will be entertained in such cases are, that there was no evidence to support the findings; that competent or incompetent testimony was rejected or admitted, and that the Court or referee refused or failed, after request made in apt time, to pass upon some material issue or question of fact, when there was testimony tending to support the same.

Much difficulty was experienced under the Code of New York upon the last mentioned question of practice, and it is now provided by statute in that State that, "before the cause is finally submitted to the Court or referee, or within such time afterwards, and before the decision or report is rendered, as the Court or referee allows, the attorney of either

party may submit in writing a statement of the facts which he deems established by the evidence and rulings upon questions of law which he desires the Court or referee to make," &c   When the Court or referee refuses or fails to pass upon such facts, and the Court can see that they are material, the party making such request may, as a matter of right, have the case remanded for further findings.   N. Y. C. C. P., 993.

Before this provision was made, it was held that where there was a failure " to find upon all the issues involved in the action, the appellant must, upon the settlement of the case, require (the Court or referee) to make such findings upon questions of fact as are necessary to the proper presentation of the questions of law arising thereon."   *People* v. *Railroad,* 57 Barb., 209;  *Manly* v. *Insurance Co.,* 1 Lans., 20;  *Van Slyke* v. *Hyatt,* 46 N. Y., 259;  *Smith* v. *Insurance Co.,* 62 N. Y , 85. This, we apprehend (there being no statutory regulation), is the proper practice with us, and, if it is not observed, the case will not be remanded as a matter of right, unless it clearly appears from the report that some material matter has been omitted, or that further findings are necessary to a just and intelligent disposition of the cause. *Straus* v. *Beardsley,* 79 N. C., 59;  *Norment* v. *Brown,* 79 N. C., 363   Applying these principles to the case before us, we see no reason for disturbing the facts as found by his Honor.   There is no exception that there was an absence of evidence to support the findings, nor that there was any improper ruling upon the admission or rejection of testimony.   The exceptions are, in effect, that the Court found against the weight of testimony, which, we have seen, cannot be passed upon here.   It is true that exceptions one, four, five and eight are addressed to the refusal or failure of the Court to find certain specified facts, but this by no means implies that the Court refused to consider or pass upon them at all, and this

must explicitly appear before this Court can entertain such exceptions.

We must therefore consider the case upon the facts set forth in the findings of the Court and the accompanying exhibits.

The plaintiffs are the judgment creditors of H. A Reams, and the indebtedness was contracted and judgments obtained prior to the business transactions between the said Reams and Eugene Morehead. No levy was ever made upon the tobacco, the subject of the insurance, and the tobacco having been destroyed by fire, plaintiffs are seeking, by proceedings supplementary to execution, to subject the money due upon the policies of insurance to the payment of their judgments. These policies were originally payable to Reams, but in 1884, before the loss, they were, with the consent of the insurance companies, made payable—some to " Eugene Morehead "; some to " Eugene Morehead, as his interest may appear," others to " E. Morehead & Co., as their interest may appear." In these proceedings the insurance companies were summoned to appear, and they denied any liability upon the said policies. A receiver was thereupon appointed, who brought actions in the Superior Court of Durham County against the said insurance companies. In these actions Reams, Morehead, and E. Morehead & Co. were joined as plaintiffs.

All of the actions were removed to the Circuit Court of the United States where they were consolidated and tried, the plaintiffs recovering the full amount of the policies. The fruits of this recovery, some twenty-five thousand dollars, are now in the hands of the receiver, awaiting the direction of the Court in the present proceedings.

The plaintiffs contended that this money stands in the place of the tobacco; that Reams alone had an insurable interest, and that the money, being his, is subject to the payment of his indebtedness.

In support of their contention they insist that the money was recovered upon the theory that Reams was the sole owner of the tobacco, and that Morehead is estopped to claim any interest in the amount recovered. One of the defences in the Circuit Court was that Reams had made a false representation in effecting the insurance, in that he had stated that he was the sole owner of the subject of the insurance. The Court held that he was the sole owner of the tobacco, "within the meaning of the words of the policy," and the opinion seems to treat Morehead as a creditor only, holding the policy as collateral security. This much it passes upon as material to the determination of the plea of the insurance companies, but it by no means declares that Morehead is not entitled to have the amount recovered applied to the satisfaction of his claims. It does not appear what testimony was before that Court, and we are therefore unable to see whether its opinion and judgment were based upon the same facts as are presented to us. Conceding, however, that the facts were the same, it is plain that the parties to the proceeding are not estopped by the rulings of the Circuit Court upon any matter incident to the trial before it. The suit was brought upon the understanding that it was only to determine the liability of the insurance companies, leaving the other questions to be settled in these proceedings. This clearly appears from the case upon appeal, which states that "a joint recovery was effected (in the Circuit Court) under an agreement that the rights of the parties to the cause should be determined under the proceedings heretofore commenced." This express agreement frees us from any supposed estoppel growing out of the trial in the said Court, and we are, therefore, to determine the questions presented solely upon the facts found by the Judge.

As the insurance companies have no interest whatever in this controversy, much, if not all, of the law peculiar to the defence of such companies against the insured is eliminated

from the case. For instance, the contention that Morehead had no technical insurable interest has no application here. The companies alone can avail themselves of such a defence, which is based entirely upon grounds of public policy, which condemns "wagering" or "gambling" policies of insurance. It is very clear to us that whatever rights the judgment creditors may have in a fund like the present (*Stamps* v. *Insurance Co.*, 77 N. C., 209), they must be pursued in equity, for the plaintiff creditors had no lien upon the tobacco, nor have they any legal interest whatever in the insurance money. On the contrary, the legal title is in Morehead and E. Morehead & Co., by reason of the assignment of the policies to them.

That such an assignment, with the consent of the company, is valid, is well settled. In *Fogg* v. *Insurance Co.*, 10 Cush., 327, Chief Justice SHAW says: "But there is another ·species of assignment, or transfer, it may be called, in the nature of an assignment of a chose in action. It is this: 'In case of loss, pay the amount to A. B.' It is a contingent order or assignment of the money, should the event happen, upon which money will become due on the contract. If the insurer assents to it, and the event happens, such assignee may maintain an action in his own name, because, upon notice of the assignment, the insurer has agreed to pay the *assignee instead of the assignor.* But the original contract remains. The assignment and assent to it form a new and derivative contract out of the original." May on Insurance, 378.

The legal title, then, being in the assignees, under an express contract with the insurance companies, let us now examine the reasons advanced why the money recovered should be taken from such assignees and given to the plaintiffs. We will first consider the policies payable "to Eugene Morehead," and "to Eugene Morehead, as his interest may appear."

There is, no suggestion that the assignment is not supported by a full and valuable consideration, nor is there any intimation of actual fraud in reference to the transaction. It is contended, however, that Morehead was only a creditor of Reams, who assigned the policies to secure his indebtedness, and that this assignment, being in the nature of a mortgage, is void as against the plaintiffs for want of registration. The discussion of this question becomes unnecessary, for the reason that we are of the opinion that Reams and Morehead were partners, in which case it is conceded that registration is not essential. It is earnestly insisted, however, that there was no partnership between these parties, and that Morehead was simply a creditor of Reams, receiving a part of the profits only as a compensation for the money lent.

We listened with great interest to the argument of the intelligent counsel for the plaintiffs. It was chiefly directed against the old principle that a participation in the profits of a business was the unvarying test of copartnership.

We are aware that this rule, as a test in all cases, has been discarded in England and in a few of the American States, and that the text-writers are gradually breaking away from it, and are endeavoring, not without confusion and conflict, to construct some new *criteria* by which the relation is to be determined.

We think, however, that even under the rule as modified in England and elsewhere, the agreement in this case would be considered as constituting a partnership.

Ever since the decision of DeGray, C. J., in 1775, in *Grace* v. *Smith*, 2 Wm. Blackstone, 998, it has been generally held that all persons who shared in the profits of a business incurred the liabilities of partners therein, although no partnership between themselves might have been contemplated. The decision was subsequently approved in the leading case of *Waugh* v. *Carver*, 2 H. Blacks., 235. This seems to have

been the rule, without any qualification, until an exception · was made in cases where the profits were looked to as a means only of ascertaining the compensation which, under the contract, was to be paid for the services of an employee. Thus the law of England stood for nearly a century, and these general principles are still regarded in North Carolina and most of the States as the "ordinary tests" of partnership. *Jones* v. *Call*, 93 N. C., 170; *Mauney* v. *Coit*, 86 N. C., 463; *Motley* v. *Jones*, 3 Iredell's Eq., 144; *Cox* v. *Delano*, 3 Dev., 89; 2 Greenleaf Ev., 482.

No case, it seems, has yet arisen in this State in which the rule has worked such a hardship as to call for its modification, but in 1860, the House of Lords, in the case of *Cox* v. *Hickman*, considerably changed the ancient doctrine. The effect of the ruling in that case is thus stated by McKENNAN, J., in *Mechan* v. *Valentine*, 29 Fed. Rep., 276 "The rule, as determined by those two old cases (*Grace* v. *Smith* and *Waugh* v. *Carver*), was that to share in the profits was to make the sharer a partner. As I understand the decision in *Cox* v. *Hickman*, that is not altogether discarded. Participation in the profits may be, and still is, to be considered as evidence tending to establish the partnership relation, and, in the absence of any other proof, is to be regarded as sufficient to make that out. In *Cox* v. *Hickman*, it is still admissible, and is be considered as evidence touching the alleged relation of partnership, and is sufficient, if no other evidence is offered. But, as determined in that case, it is not conclusive. Other considerations are to be considered in connection with the participation in the profits, in determining whether the partnership relation has been created or not."

To the same effect is 1 Lindley Partnership, 35, where, in speaking of the result of the decision in Cox's case, it is said "that *prima facie* the relation of principal and agent is constituted by the agreement entitling one person to share the profits made by another to an indefinite extent, but that this

inference is displaced, if it appears from the whole agreement that no partnership or agency was really intended."

There is nothing in the facts of this case which requires us to make a departure from the old rule; nor is it necessary that we should attempt to lay down a new test of partnership.

Applying the rule, however, as above modified, we can find nothing in the agreement under consideration which rebuts the *prima facie* case of partnership arising out of the participation in the profits. Indeed, we think the circumstances all tend to sustain such a conclusion.

In support of the argument that the money advanced by Morehead was only a loan, the plaintiffs cited the case of *Richardson* v. *Hughitt*, 76 N. Y., 55. There was no pretence in that case but that the money was, in fact, lent by Hughitt to the firm of Bench Bros. & Co., and that he was to receive one-fourth of the net profits upon the sale of certain wagons, "with interest on the advances made at five and one-quarter per cent., so far as the cash received would go, and the balance in notes on interest at seven per cent." This was held to be a loan.

But there is a most important difference between that case and ours. There, it is apparent that the money advanced was to be repaid at all events. Its repayment was not contingent upon the success of the business. Indeed, the case expressly states that the advance was a loan, and that the agreement as to profits, &c., was simply a means of securing it and making compensation therefor.

In our case, the usual elements of partnership are present. Morehead advances the capital, and Reams is to contribute the services to the joint undertaking, which is the purchase and sale of tobacco. No personal liability is contracted by Reams for the money advanced, and the said capital is to be paid out of the partnership stock, and the balance, after the payment of expenses, &c., is to be equally divided as profits

between the parties. This, in our opinion, constitutes a partnership, for Morehead, under this agreement, has a proprietary interest both in the stock and the profits.

That such a transaction is not a loan is settled, we think, by high authority. We extract the following from 1 Bates' Partnership, 49, which is well sustained by many decided cases: "What is a loan? The fact, however, that the interest expected or received is disproportionate, and the contract usurious, will not affect its construction. To constitute a loan, the money advanced must be returned, in any event, independently of the success or non-success of the business or the making of profits. If the repayment is contingent upon the profits, it is not a loan, for it is then made, not upon the personal responsibility of the borrower, but upon the security of the business."

A glance at the agreement plainly shows that the foregoing principles govern our case and are decisive against the plaintiffs' position that Morehead was only a creditor of Reams. Here, the payment, both of the capital and the compensation, was entirely dependent upon the success of the business.

It was urged on the argument that his Honor should have found that, in addition to profits, Morehead was to have interest on the money advanced. The testimony only shows that money was borrowed at interest by *Morehead & Reams* of *Morehead & Co.* This plainly does not support the contention; but, granting that Morehead was to have interest on the money advanced, this would not so affect the agreement as to change the relation of the parties. There can be no doubt that a partnership may borrow money at interest for the purpose of its business, and we can see no reason why it cannot borrow of a partner as well as of third persons.

Charging interest in such cases, where the facts are doubtful, may be very material in determining the character of the agreement, but it cannot of itself, as we have stated,

change the relation of partnership to that of creditor and debtor, when the terms of the contract are ascertained, disclosing the existence of the partnership.

This view as to interest is fully supported by the charge of the learned Judge who tried the case of *Mauney* v. *Coit*, *supra*, which charge was afterwards sustained by this Court. That case was very similar to this, and on the whole question of co-partnership, is direct authority against the plaintiffs.

Our conclusion, therefore, is, that there being a partnership between Morehead and Reams, the former must be paid out of the insurance money the amount advanced by him.

As to the two policies payable to "Morehead & Co., as their interest may appear," it is only necessary to say that if the assignment is void for want of registration, the money is payable to Reams, under the original contract of insurance, and, as he was a partner of Morehead and jointly responsible to Morehead & Co. for the large amounts borrowed of them for the purposes of the business, and the insurance was upon partnership property, we can see no principle of law or equity which requires the fund to be diverted from the payment of the partnership liabilities and paid over to the individual creditors of Reams, whose debts were contracted anterior to the business transactions of Reams and Morehead.

We are, therefore, of the opinion that there was no error in the ruling of his Honor, and that the judgment must be affirmed.

Affirmed.