WILLIAM C. ROUSE et al. v. JOHN C. BOWERS et al.

*Assignment—Notice of Fraudulent Intent—Mortgage—Measure of Value.*

In an action brought to charge a trustee in an assignment with certain disbursements thereunder, it appeared that, pursuant to an agreement with one of the assignors, and on the day preceding the execution of the assignment, the assignee made a deed to both the assignors instead of to one as agreed, and took a mortgage to secure the unpaid purchase-money, $2,500, evidenced by notes, which showed they had been altered from $2,250, because, as was explained, the cash payment agreed upon was not paid, or only $25.00 of it. The jury found that the assignment was made with fraudulent intent on the part of the grantors: *Held*, (1) that upon

these facts, the referee could have properly found that the assignee was not charged with notice of such intent; and such finding cannot be set aside as a matter of law; (2) that the acceptance of such trust, wherein was conveyed the assignor's stock of goods and was secured as a first preferred debt the purchase-money previously secured by said mortgage, was not a waiver of his rights under the mortgage; (3) that the mortgagee and trustee should not be charged with a greater value of the land than was found by the referee to be fair.

This was a CIVIL ACTION, heard at the March Term, 1892, of DURHAM Superior Court, upon exceptions filed by the plaintiffs, before *Whitaker, J.*

The Court overruled the exceptions, except such as appear in the judgment, and the plaintiffs appealed.

The referee made the following findings of fact:

1. That on the 8th of April, 1889, the defendants John C. Bowers and B. J. Arendell, trading as Bowers & Arendell, made an assignment to B. W. Matthews of all their real and personal property for the benefit of their creditors, and that said Matthews accepted the said trusteeship conferred by said deed without knowledge of the fraudulent intent of the makers of said deed, and made the disbursements which he afterwards made, and with which he is credited, without knowledge of the fraudulent intent of the makers of said deed.

2. That at the time said deed in trust was executed, the said B. W. Matthews individually held a mortgage on the land conveyed in said deed of trust for twenty-five hundred dollars, and he did not, at the time of said execution, nor at any time thereafter, intend to give up his rights as mortgagee, nor that his mortgage should be merged in the deed of trust, but, on the other hand, refused to allot to said Bowers and Arendell a homestead in said land, but insisted on selling it under his said mortgage.

3. That when the one last to fall due of the bonds secured by said mortgage did fall due, the said B. W. Matthews, as

mortgagee, after due advertisement, sold the land mortgaged to him, and the land brought $2,500, which was a fair price for said land at that time, and all of which went to pay the bond secured by said mortgage.

4. That there went into the hands of said B. W. Matthews, trustee, for the benefit of creditors, property consisting of a stock of general merchandise, whose inventory cost price, including freight, was $4,321.75, besides open accounts of inconsiderable value.

5. That the said B. W. Matthews executed his office of trustee honestly, prudently and to the best interest of creditors, and from the sale of goods, the rental of the store, the collection of debts (including those which were solvent and with which he is charged), collected as said trustee the sum of $3,240.47, with which amount he is properly chargeable.

6. That the said B. W. Matthews, as trustee aforesaid, before he had any notice of the fraudulent intent of the makers of said deed of trust, expended *bona fide* in the execution of said trust $2,007.72, which consisted of the items in the account hereto attached made a part of this findings of fact, and that each item marked "Allowed" in said account was a proper disbursement to be made by him as trustee aforesaid.

7. That at the bringing of this action the said B. W. Matthews, as trustee aforesaid, had in his hands for the benefit of the creditors of Bowers & Arendell, as shown by the two findings of fact next preceding, the sum of $1,232.75.

8. That the said B. W. Matthews deposited on an interest-bearing certificate the sum of $1,104.64 belonging to his trust, and this certificate accrued interest to the amount of $88.91, which certificate was turned in by him before the hearing of this reference to the Clerk of this Court, and by the Clerk of this Court paid, with the interest accrued, to the attorneys of plaintiffs.

The following conclusions of law were submitted :

1. That the said B. W. Matthews did not have, at the time of the execution of said deed of trust, nor at any time before the disbursements credited to him were made, notice of the fraudulent intent of the makers of the deed, nor had facts come to his knowledge sufficient to put him upon notice.

2. That the said B. W. Matthews did not, by his acceptance of his office as trustee, waive the right secured to him by his mortgage previously executed, nor was said mortgage merged in said deed of trust, nor was said Matthews estopped to claim his rights as mortgagee, but he became liable to the creditors of said Bowers & Arendell only for the amount that came into his hands over and above the amount of the mortgage lien on said land, which from said land was nothing.

The other facts appear in the opinion.

*Messrs. J. S. Manning* and *W. W. Fuller*, for plaintiffs.
*Messrs. J. W. Graham* and *J. Parker*, for defendants.


SHEPHERD, C. J.: When this case was before us on a former appeal (108 N. C., 182), we held that there was error in charging the trustee Matthews with the amount paid out by him under the terms of the deed of trust before the commencement of the action to set it aside, or before he had knowledge of the fraudulent intent of the assignors. As his liability depends entirely upon whether he acted in good faith, the action cannot be deemed to have commenced as to him until he had actual notice thereof by the service of the summons or otherwise. It appears that he had no notice of the suit until the summons was served on the 16th of August, 1889, and as his last disbursement was made on the 12th of that month, it must follow that, in order to charge him personally, it must be shown that he had actual knowledge of the fraudulent intent, as distinguished from the constructive knowledge arising out

of the pendency of the suit. The referee reports that he had no such knowledge at the time of making the disbursements, and that he acted in good faith throughout the whole transaction. To this report there were many exceptions, all of which were overruled by his Honor, except one or two which need not be here considered.

We do not think it necessary to go into a particular examination of each exception. It is sufficient to say that the chief points presented for our consideration are whether the finding of the referee that the disbursements were made in good faith before notice of the fraudulent intent of the assignors is sustained by the testimony, and whether the assignee should not be charged with the proceeds of the sale of a certain lot which had been mortgaged to him by the said assignors prior to the execution of the deed of assignment. There were exceptions to the failure of the referee to find certain specific facts, but as these were involved in the main questions to be determined by him, and as there was no request for such specific findings, nor any motion to remand, it is clear, under the practice laid down in *Fertilizer Co.* v. *Reams*, 105 N. C., 283, that the said exceptions should be overruled. It is insisted, however, that there was no sufficient evidence to sustain the facts actually found by the referee, or rather that, taking the testimony of Matthews to be true, the referee should, as a matter of *legal inference*, have found that the said assignee had knowledge of the fraudulent intent of the assignors.

The deed of assignment was filed for registration on the 9th day of April, 1889, and upon a careful examination of that instrument, we can see nothing on its face that indicates a fraudulent intent on the part of the assignors. The assignors had a right to prefer creditors (*Barber* v. *Buffaloe*, decided at this term), and they also had a right to reserve their homesteads and personal property exemptions. *Bobbitt* v. *Rodwell*, 105 N. C., 236.

The facts, then, from which the knowledge of the fraudulent intent is to be inferred must be looked for beyond the provisions of the said conveyance. As we understand it, the fraudulent intent insisted upon by the plaintiffs and found by the jury, consisted in the purchase upon credit of a lot of land in the town of Durham, and the securing of the payment of the purchase-money in the deed of assignment with the view of obtaining a homestead for each of the assignors in said property to be paid for out of the personal assets. In other words, it is urged that the transaction was intended to cover the withdrawal of a large part of the personal assets from the creditors under the shield of the homestead. Matthews denies that he knew of any such purpose, but it is contended that he is affected with implied or constructive knowledge by reason of his admission of certain circumstances sufficient to put him upon inquiry. The cases cited by counsel do but declare the general proposition as to implied or constructive notice, as stated by Mr. Pomeroy, 2 Eq Jur., 607. He says that "whenever a party has information or knowledge of certain extraneous facts, which, of themselves, do not amount to nor tend to show an actual notice, but which are sufficient to put a reasonably prudent man upon an inquiry respecting a conflicting interest, claim or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to a discovery of the truth, to a knowledge of the interest, claim or right which really exists, then the party is absolutely charged with constructive notice of such interest, claim or right." Conceding that this doctrine applies to a case where notice of a particular secret intent is sought to be fixed upon a party, we are unable to see how it can operate upon Matthews in the present case. It is to be observed that the circumstances relied upon tended to show actual notice, but the referee found, upon the whole testimony, that the assignee had, in fact, no notice, and acted in good faith. The inquiry,

then, is whether those circumstances amounted to constructive notice of the particular intent to which we have referred.

We do not think that such a result can follow from the transaction between the parties on the day preceding the assignment. It appears that the defendant Arendell had previously agreed to purchase the above-mentioned lot of Matthews for the sum of twenty-five hundred dollars, and that two hundred dollars were to be paid in cash. On the day when the deed and mortgage were executed only twenty-five dollars were paid in cash, and the notes were altered from twenty-two hundred and fifty dollars to twenty-five hundred dollars. The alteration was made in consequence of the failure to make the cash payment as agreed upon, and the discrepancy of twenty-five or fifty dollars may also be accounted for on the ground that a new agreement was then made because of the failure of Arendell to make the said payment. Matthews testified that he had no knowledge at that time of the purpose of Arendell & Bowers to make an assignment and that he knew nothing of it until the next day, when they had the deed of assignment prepared, and insisted upon his acting as assignee. It is true that he stated that he thought Arendell had some motive in having the deed made both to himself and Bowers, the negotiations having been made with Arendell alone; but this motive he attributed to the fact that Arendell had been indicted in a number of cases. The foregoing circumstances, in our opinion, cannot have the effect of fixing Matthews with constructive notice of a particular intent on the part of Arendell & Bowers in making a general assignment on the next day. Neither does the fact that he stated that he " did not like the way the papers (speaking of the assignment) were drawn "—reserving a homestead to the assignees in land which they had not paid for—raise a conclusive presumption that he knew of their fraudulent purpose. He consulted an attorney upon the subject, who correctly advised him that such a provision would make no

difference if the assignment was made in good faith. These
and other less significant circumstances, while affording evi-
dence of knowledge or complicity, do not amount to con-
structive notice of a fraudulent intent on the part of the
assignee. Granting that they were sufficient to put him
upon inquiry, it is difficult to understand what *facts* he could
have ascertained in addition to what he already knew.
There was no fact to be discovered, but only the existence
of a secret intent on the part of the assignees. Under the
circumstances, the knowledge of this intent was a question
to be passed upon by the referee, and as he has found that
Matthews had no notice, and acted in good faith, and as there
is sufficient evidence to sustain such finding, it cannot be set
aside on the ground that, as a *matter of law*, he should have
found otherwise. *Hodges* v. *Lassiter*, 96 N. C., 351; *Battle* v.
*Mayo*, 102 N. C., 413.

The next question to be passed upon is whether, by
accepting under the trust (in which the purchase money for
the lot was secured), the said Matthews waived his rights
under the mortgage previously executed to him. The ref-
eree finds, and the evidence fully sustains him, that he did
not release, or intend to waive any of his rights under the
said mortgage. It may be true that one cannot act as a
trustee in a deed, and at the same time assert a right which
conflicts therewith, but we do not see how there is necessa-
rily any such conflict in this case. It is true that in the
assignment it is provided that the assignees shall have their
homestead exemption; but it is well settled that there may
be a homestead in an equity of redemption. *Burton* v. *Spiers*,
87 N. C., 87. It is further to be remarked that a considera_
ble amount of personal property was included in the assign_
ment, out of which the mortgage (which was preferred) might
have been fully discharged. As a matter of fact, the assignee
never set apart the homesteads, but foreclosed his mortgage
when it matured, and has never applied any part of the trust

fund to the payment of his debt. The insertion of his debt in the deed of assignment was simply additional security, and we see nothing in the transaction which, in fact or in law, amounted to a waiver of his mortgage. " The taking of a second security of equal degree with the first for the same debt will not, by operation of law, extinguish the first. Acceptance of the second will only operate as an extinguishment of the first when it is shown that the creditor accepted the second mortgage with the understanding that that should be its effect." *Hutchinson* v. *Smartweller*, 31 N. J. Equity, 206; *Gregory* v. *Thomas*, 20 Wend., 17. See also *Raiford* v. *Raiford*, 6 Ired. Eq,, 490.

It is further contended that the jury found that the lot was worth three thousand dollars, and that as Matthews purchased it indirectly at his mortgage sale he should be charged with that amount. There is no specific finding by the jury that the lot was worth that amount; but admitting this to be the value at the date of the assignment, it does not follow that such was its value at the date of the mortgage sale. The referee finds that it sold for a fair price, and as the plaintiffs are not asking that the sale be set aside, but only that he be charged with the value of the land, we are of the opinion that he can only be charged with the value at the time of the sale, as fixed by the referee.

We have examined the entire record, and are of the opinion that all of the exceptions were properly disposed of by his Honor.

Affirmed.