W. L. ROTHROCK, Trading as PIEDMONT SHEET METAL COMPANY, v. J. A. NAYLOR, W. L. ROTHROCK and J. T. BOYER, Trustees for BONIN REALTY COMPANY, and E. F. STRICKLAND.

(Filed 12 January, 1944.)

1. **Partnership § 1—**

A partnership is a combination by two or more persons of their property, effects, labor, or skill in a common business or venture, and under an agreement to share the profits and losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business.

2. **Partnership § 2—**

While an agreement to share profits is one of the tests of a partnership, an agreement to receive part of the profits for services and attention, as a means only of ascertaining the compensation, does not create a partnership.

3. **Same—**

When the facts are undisputed, what constitutes a partnership is a question of law.

**4. Same—**

Where the owner of certain city lots agreed with a contractor to furnish all labor and material, carry protective insurance, and build a house on each lot according to written specifications in each case, upon the payment by the owner of named sums at certain stages of construction and should the houses, or any of them, be sold within four months after completion, the owner to receive a named sum for each lot, the balance in each case going to the contractor, but on a failure to sell within the four months period, the owner to pay a specified amount in full for each house, there is no evidence of a partnership.

APPEAL by plaintiff from *Gwyn, J.,* at April Term, 1943, of FORSYTH.

Civil action to recover on contract for heating systems installed in houses constructed under agreement between Bonin Realty Company and defendant E. F. Strickland.

In the trial court the evidence introduced by plaintiff tends to show these facts:

1. On 17 June, 1941, defendant Dr. E. F. Strickland, being the owner of five certain lots of land, numbers 7, 8, 9, 10 and 11 on the north side of Westover Avenue in Winston-Salem, North Carolina, entered into five separate agreements with Bonin Realty Company for the construction of "a five-room frame residence" on each of these lots. By the terms of each of these agreements, Bonin Realty Company, called "the contractor," agreed with Dr. Strickland, called "the owner," (a) "to build for the owner" such residence, (b) to furnish all materials and perform all the work shown on the drawings and described in the specifications of the owner, which are attached to and made a part of the contract, (c) to do everything required by the contract, specifications, and drawings, and to commence work immediately and to complete same as soon as possible, consistent with good workmanship, (d) to carry workmen's compensation insurance and public liability insurance, which it represents it is carrying, and (e) to pay all social security and unemployment taxes which may be assessed in connection with the work. And in each agreement Art. IV is identical except as to certain figures. This Article as it appears in the agreement relating to lot No. 7 and the house to be erected thereon reads as follows:

"ARTICLE IV. That it is the understanding and intent of both parties that the house and lot shall be sold for an approximate price of $4,700.00; and that the owner shall receive as his portion of the sale price the sum of $975 for the lot, and the contractor shall receive the balance of the sale price for the construction of the residence. In the event that the house is not sold within four months after completion, the Owner shall pay to the Contractor the sum of $3,750.00. During construction the Owner agrees to pay to the Contractor as follows: $900.00 when the roof has been put on, $900.00 when the house is plastered, and $900 when the standing trim and floors have been installed."

In Article IV of each of the other four agreements, as in the above quotation, an approximate sale price is specified, and it is provided therein (a) "that the owner shall receive as his portion of the sale price the sum of $975.00 for the lot, and the contractor shall receive the balance of the sale price for the construction of the residence"; (b) that in the event that the house is not sold within four months after completion, the owner shall pay to the contractor a specified sum of money; and (c) that during construction the owner agrees to pay to contractor a specified sum of money, "when the roof has been put on," a like amount "when the house is plastered" and a like amount "when the standing trim and floors have been installed."

2. Between 11 September, 1941, and 17 January, 1942, separate sale agreements were entered between Bonin Realty Company and purchasers for the sale of the said lots of defendant Strickland, and the house constructed thereon, at approximately the sale prices specified in the respective agreements pertaining thereto between Bonin Realty Company and E. F. Strickland; and pursuant thereto the defendant E. F. Strickland and his wife executed deeds to the respective purchasers. Four checks from Bonin Realty Company payable to E. F. Strickland, bearing dates between 1 November, 1941, and 6 February, 1942, for approximately the amount Strickland was to receive for the lot, plus the total of amounts advanced during construction under the agreements relating to lots 7, 9, 10 and 11, and drawn on First National Bank of Winston-Salem, N. C., were endorsed by Strickland.

3. On 13 June, 1941, plaintiff, as dealer, proposed in writing to "Bonin Realty Company (name of purchaser)" to install in dwellings No. L-7, L-8, L-9, L-10 and L-11 for Dr. E. F. Strickland, under construction on Westover Drive, Winston-Salem, N. C., certain heating systems in accordance with certain specifications and stipulations for "the net cash purchase price" of $1,900.00 payable when the work is completed. This proposal was accepted in name of "Bonin Realty Company, W. L. Bonin, Pres." After the contract was so signed, the heating systems were all completed and put in operation by plaintiff. The job on lot No. 7 was begun on 10 July, 1941, and completed on 26 January, 1942, that on lot No. 8 was finished on 10 January, 1942, and those on lots numbers 9, 10 and 11 were completed in fall of 1941, and plaintiff has not been paid anything on any of the jobs. Demand for payment was made and refused.

4. Notice and claim of lien against lot No. 7 for $375.00 with interest thereon from 27 January, 1942, reciting that the labor was performed and materials were furnished beginning 10 July, 1941, and finished on 27 January, 1942, was filed in office of clerk of Superior Court of Forsyth County, date not shown, under this caption, "W. L. Rothrock,

trading as Piedmont Sheet Metal Company, claimant, *v.* Bonin Realty Company, and E. F. Strickland, owners."

5. Bonin Realty Corporation is a corporation and has made an assignment for the benefit of its creditors.

6. The reasonable market value of each of the five lots in question prior to the construction of the houses thereon, 17 June, 1941, and after sewer and water had been run to the lots, was from $325 to $350.

Furthermore, in the absence of the jury, plaintiff, W. L. Rothrock, under examination by his attorney, testified: That about 1 July, 1942, he had a conversation, probably an hour, with Dr. Strickland at his home, the substance of which was this: "I approached Dr. Strickland in a friendly way and told him that I was out there to see if he could convince me that I shouldn't sue him for $1,900.00 that was due in the installation of five heating plants that I had installed over on Westover Drive. And Dr. Strickland told me that he had nothing to cover up; that he had a contract with Bonin Realty Company to build five houses, and that he had paid him in full for the construction of the houses, and also mentioned that he had loaned Bonin Realty Company moneys—he didn't state how much money, . . . and that as far as he was concerned he owed Bonin Realty Company nothing." And, continuing, "I told Dr. Strickland that Bonin had told me before this contract was written . . . that these houses were being built for speculation, and that I had asked Bonin if it was on the same basis as the previous five houses and he told me that it was," and that "Dr. Strickland said that he had a contract—the way I understood Dr. Strickland was that he had a contract with Bonin on the first house or houses that was built, and the other houses were built under that same contract." Then on being asked "When you told Dr. Strickland that Bonin had told you that they were being built for speculation, did Dr. Strickland deny it?" the witness began to answer by saying "he didn't deny that the houses were being built . . . ," but upon objection being sustained on the ground that the witness had stated what Dr. Strickland said, and that whether what he said was a denial is not for the witness to say, the witness proceeded no further in answering the question. Then continuing the examination the witness was asked by his attorney why he said "for Dr. E. F. Strickland" in the contract, and why he "struck out 'I' down there and inserted 'we,'" and in answer thereto said, "I didn't know what the setup was. I knew that there was something there I couldn't understand. I knew that Dr. Strickland had title to the lots. Bonin had made the statement that the houses were being built for speculation, and I tried to draw a contract tying the two parties together. I didn't have an attorney to draw the contract. I was just using my own judgment, trying to draw a contract that would tie the two parties together and also that would give me the privilege at a later date of filing a lien against the property."

Thereupon, upon inquiry by the court, the witness stated that he did not talk with Dr. Strickland before he furnished the materials. The court then ruled that the conversation the witness had with Bonin Realty Company and what Bonin said about speculation would not be competent repeated by him to the defendant, Dr. Strickland, unless Dr. Strickland admitted it or gave such an answer as to indicate his assent to the proposition. And further as to testimony as to reason why witness put "for Dr. Strickland" in contract and why he put "I" for "we" in there, the court ruled that the witness "by himself can't fix the contract for Dr. Strickland, that will bind Dr. Strickland, and whatever language he wrote merely indicates his notion of the relationship and his notion is not evidence to establish the fact"—and informed counsel, "If you have evidence otherwise to go to the jury upon the question of partnership, it will go . . ." To these rulings the plaintiff excepted.

Thereupon, the jury returned to the courtroom and the trial proceeded. And the court stated to counsel for plaintiff that they need not go into the phase of the testimony which the court ruled out, but that they might proceed to ask questions on the rest of it—that he didn't want to be misunderstood; that part of the evidence was thought to be competent, and part incompetent. Whereupon no questions were asked, and attorney for plaintiff announced "That is all from Mr. Rothrock, your honor."

From judgment as of nonsuit at close of his evidence, plaintiff appeals to Supreme Court and assigns error.

*Joe W. Johnson and Wm. H. Boyer for plaintiff, appellant.*
*Ingle, Rucker & Ingle for defendant, appellee.*

WINBORNE, J. This is the determinative question on this appeal: Is the evidence offered by plaintiff taken in the light most favorable to him, as we must do in considering a motion for judgment as in case of nonsuit, sufficient to take the case to the jury upon an issue as to the existence of a partnership between Bonin Realty Company and defendant E. F. Strickland in respect to the construction of the houses and sale of the houses and lots on which the houses were constructed? Careful consideration of the evidence leads to the conclusion that the court below properly ruled in the negative.

"To make a partnership, two or more persons should combine their 'property, effects, labor, or skill' in a common business or venture, and under an agreement to share the profits and losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business." This is definition given in opinion by *Hoke, J.,* in case of *Gorham v. Cotton,* 174 N. C., 727, 94 S. E., 450, as containing the

substantive features of definitions of the term as approved and applied in numerous cases in this State, as in *Fertilizer Co. v. Reams,* 105 N. C., 283, 11 S. E., 467, and *Mauney v. Coit,* 86 N. C., 464.

However, the principle is well established in this State that "while an agreement to share profits, as such, is one of the tests of a partnership, an agreement to receive part of the profits for his services and attention, as a means only of ascertaining the compensation, does not create a partnership." *Kootz v. Tuvian,* 118 N. C., 393, 24 S. E., 776. See also *Mauney v. Coit, supra; Fertilizer Co. v. Reams,* 105 N. C., 283, 11 S. E., 467; *Lance v. Butler,* 135 N. C., 419, 47 S. E., 488; *Trust Co. v. Ins. Co.,* 173 N. C., 558, 92 S. E., 706; *Gurganus v. Mfg. Co.,* 189 N. C., 202, 126 S. E., 423; *Wilkinson v. Coppersmith,* 218 N. C., 173, 10 S. E. (2d), 670.

Moreover, "when the facts are undisputed, what constitutes a partnership is a question of law . . ." *Webb v. Hicks,* 123 N. C., 244, 31 S. E., 479; *Bolch v. Shuford,* 195 N. C., 660, 143 S. E., 218.

In the light of these principles the written agreements between E. F. Strickland, the owner, and Bonin Realty Company, the contractor, fail to reveal the elements essential to constitute a partnership. Rather, it is manifest that in substance and in form these agreements create the relationship of owner and independent contractor. The Realty Company agreed to furnish all the materials and to perform all the labor for the construction of the several houses in accordance with plans and specifications which in each instance are made a part of the agreement, and, in any event, it is to receive therefor from Strickland, the owner, a specified sum of money—the owner agreeing to make partial payments on the contract price at certain stages of the construction. The provisions for payment on contract as the work progressed are such as are found in building contracts, and are wholly consistent with independent relationship between the parties. But out of the provisions relating to the sale of the houses and lots after the houses shall have been constructed, it is contended that there is profit sharing from which the jury may find a partnership arrangement existed. It is apparent, however, that any increased amount the Realty Company would receive and did receive over and above the fixed stipulated sum for constructing the houses was by way of compensation for selling the houses and lots. If in each instance the house and lot had not been sold within four months the Realty Company would have received from Strickland, the owner, the fixed stipulated sum for constructing the house. And in this connection if the Realty Company made a profit in constructing the house there is no provision for the owner to share it, nor is there any provision by which the owner is to bear any loss the Realty Company might have sustained.

Moreover, there is no provision by which the Realty Company would share in any profit the owner might make in any sale made by the owner if the house and lot had not been sold within four months, or by which it would bear any loss the owner might sustain in such sale.

Furthermore, while the plaintiff offered evidence tending to show the value of the lots before the houses were built on them, there is no evidence as to what the owner paid for them. But if the owner realized a profit from the sale of the lots there is no provision for the Realty Company to share it. The owner agreed to limit his interest in the sales price to $975 for the lot. This he received, plus the return of the money advanced on the contract price. It is therefore manifest that independent relationship permeated all phases of the transactions. And as the facts are undisputed, the evidence presents a question of law for the court.

It is contended, however, that the excluded testimony tends to show an admission by silence of a partnership arrangement between the Realty Company and Strickland. With this we are unable to agree. The excluded testimony is not inconsistent with the terms of the written agreement between the parties introduced in evidence by the plaintiff. But granting that the building of the houses and the sale of the houses and lots were speculative ventures, the contract fails to show that a partnership existed.

The judgment below is

Affirmed.