This action was brought by the plaintiff to enjoin the sale of certain real property under a power of sale contained in a mortgage given by them to the defendants. The real controversy, though, arose out of the settlement of their partnership dealings. Defendants being the owners of lands, chattels, and turpentine leases in the State of Florida, conveyed a one-half undivided interest therein to the plaintiffs for the sum of $8,000, under an existing agreement to form a copartnership for the purpose of carrying on a turpentine business, and (292) this was to constitute the capital of the firm. This was in November, 1907, The mortgage was given to secure the payment of $5,000 of the $8,000 indebtedness. The business was entered upon and continued by the firm of Kennedy Brothers Buie until 18 April, 1910, when it was dissolved. The partners contributed equally to the capital, but agreed to share unequally in the profits, M. A. Buie to receive three-fourths thereof and defendants the other fourth, the excess of one-fourth over defendant's share going to Buie on account of personal services to be rendered by him.
The case was referred to Mr. S. F. Mordecai, to take and state an account of the copartnership, the sale having been enjoined until the amount due on the $5,000 note could be ascertained. The referee found the balance due 1 December, 1912, to be $4,778.25. Exceptions were duly taken to his findings of fact and law, and upon a review of his report, under the exceptions, the court found the balance to be $5,394.03.
The principal items in dispute between the parties were as to what constituted profits of the business, and whether, in estimating the same, depreciation of the capital by its use in the business should be counted as a loss, or whether the profits to be divided should be ascertained simply by deducting the costs and expenses of operation from the gross returns of the business.
The referee was of the opinion that no loss or depreciation of capital should be considered in making the computation, and upon this basis he found the profits to be $1,279.60, while the judge was of the opposite opinion, and held that, under the facts of the case as found by the referee and approved by him, the amount by which the capital had been reduced in value by use in the business should be considered and deducted *Page 234 
from the gross returns, and under this view he found the profits to be $174.03.
There was another question of importance in the case, which, perhaps, does not enter strictly into the partnership account, but should be considered as a separate and independent item of charge against the defendants, if plaintiff's claim is held to be well founded. They (293) alleged that at the time they entered into the partnership arrangement the defendants orally represented and agreed, as a part of the terms of the purchase of the land, chattels, and turpentine interests or leaseholds, that the timber on the land would "cut not less than thirteen crops of 10,000 boxes each, and that any deficiency in this amount would be deducted from the purchase price; that the timber failed by actual test to cut more than ten crops of 10,000 boxes each, and by reason thereof plaintiffs are entitled to a credit of $4,500 on the price, leaving only a balance of $3,500 due originally thereon, without any deduction on account of their subsequent partnership transactions. The referee held, the court affirming the finding, that the claim for the deficiency in the crops varied or contradicted the writing, and, therefore, excluded it from consideration. Evidence as to it was taken under objection by defendants, but finally ruled out for the reason just given.
There are some other subsidiary questions, which will be noticed in the further development of the case. The court gave judgment against the plaintiffs for $5,394.03, with interest on the principal, $5,000, from 10 April, 1910, and the costs, and ordered a sale of the property described in the mortgage. Plaintiff, having assigned errors, appealed to this Court.
After stating the case: The first question presented is the one in regard to the profits. The authorities seem to hold it to be clear that an important distinction exists between the terms "profits" and "gross returns." Profits are the excess of returns over a advances; the excess of what is obtained over the cost of obtaining it. Losses, on the other hand, are the excess of advances over returns; the excess of the cost of obtaining over what is obtained. The expressions "net profits" and "gross profits" are met with in the books, but they are inaccurate. "Profits" and "net profits" are, for all legal purposes, synonymous expressions. All profits are necessarily net, and no profits can possibly be gross. But the term "gross profits" is some (294) times used to designate the returns. This use of the term, however, *Page 235 
is inaccurate. A business is susceptible of "gross returns" and "net returns," and "profits" is the synonym of "net returns." The distinction between profits, on the one hand, and gross returns on the other hand, is obvious. George on Partnership, p. 64. It is said by the same author that an agreement to share gross returns does not create a partnership, for the reason that such an agreement is inconsistent with the joint ownership of the profits. In a partnership the profits are shared because the partners are joint owners of them. If no profits have been made, no partner is entitled to any share as against the others, for there is nothing to share. But where the agreement is to share gross returns, the share is independent of the existence of profits, and may be taken when there is a loss. It necessarily follows that an agreement to share gross returns creates a debt between the parties, and not a joint proprietorship in the profits. He then quotes Parsons on Partnership; sec. 62, as follows: "Though the sum may come out of profits, if they are sufficient, it will, nevertheless, come out of somebody, though there be no profits. The fixed amount, which is independent of the success or failure of the business, betrays a stranger's interest, and not a principal's. A proprietor's share springs out of the business, and varies according to its vicissitudes. A principal who made no contribution himself could never take his copartner's, and make gain out of his copartner's loss and the failure of the business." George on Partnership, pp. 64, 65. We deduce the principle, from what is there said, that the word "profits," when used in relation to the final distribution of the partnership effects or to the shares of the members upon a settlement of its affairs, means "net returns," that is, the gross returns after paying its liabilities and taking off the losses in the business and the costs and expenses of operation. But in this case the vital question is, whether the amount of the reduction in the value of the capital contributed by the partners by the use of it, that is, by cutting and scraping the boxes, and in other respects, should be deducted from the gross returns. The partnership, as an entity distinct from its individual members, (295) becomes indebted to them for the capital they advance, and upon a settlement this debt should be paid just as any other liability of the firm, except that it is subordinate to the prior claims of creditors. As between the members and the partnership, it is a debt, and it makes no difference whether the capital was contributed in money or in money's worth, such as property. Upon this subject the rule is thus stated in George on Partnership, p. 116. "Where the business has resulted in a loss impairing the capital, such loss is prima facie to be equally borne, notwithstanding the fact that the capital was unequally contributed. Thus, in Whitcomb v. Converse the articles of partnership provided *Page 236 
that A. and B. should contribute the whole capital in unequal proportions; that B., C., and D. should contribute all their time to the business, and A. `such time as he may be able to give'; and that each should receive one-fourth of the net profits. The business resulted in a loss of a portion of the capital. It was held that the capital constituted a debt of the partnership, to which all the partners were bound to contribute equally. The fact that the partner contributing services loses them does not affect the question. The doctrine here presented is sustained by the great weight of authority, though there are some contra
cases. Of course, the agreement of the parties determines the proportions in which losses are to be shared, and what losses are to be shared. But prima facie, a loss of capital is like any other loss, and is to be borne in like proportions." And at p. 117: "Any advances of money to the firm by a partner in excess of his contribution agreed to be made in the contract do not come within the designation of capital, the same being nothing other than a loan to the partnership, whereby the loaner becomes a creditor of the firm, though, of course, not of equal standing with outside creditors in respect of payment in case of the firm's insolvency." And again at p. 115: "When the amount of each partner's contribution is shown, there is no room for presumptions, and upon a dissolution each partner must be repaid the amount contributed (296) by him, before there is any distribution of profits."
It is apparent here, from the facts and circumstances, though the terms of the partnership were not all reduced to writing, that the partners mutually intended that the property contributed by them, as capital, should belong to the firm and be made good to the partners at its dissolution, and not merely that the firm should have the use of it, and for this reason defendants conveyed one-half interest in it to the plaintiff Buie. "Where, as is usual in an ordinary mercantile partnership transaction, a partnership is created, not merely in profits and losses, but in the property itself, the property is transferred from the original owners to the partnership, and becomes the joint property of the latter."Whitcomb v. Converse, 119 Mass. 38, 43. This was directly held by the same Court in Livingston v. Blanchard, 130 Mass. 241. Some authorities treat the impairment of the capital as a loss to be borne by the parties in the same proportion as they share the profits. "If there are no profits, and the capital has been impaired or wholly lost, in dividing losses the deficit must be repaid like any other loss, for impairment of capital is a loss the same as any other, and is not to be reimbursed out of profits merely. That the capital has been contributed unequally and losses are to be equal makes no difference, or if the capital has been wholly paid by one partner, the other contributing *Page 237 
services and skill, the latter who has lost his time owes to the former the same proportion of a loss of capital that he would be chargeable with had the losses not reached the capital, but had simply diminished the profits." 2 Bates on Partnership, sec. 813. He gives several concrete examples of this principle in the notes to the text. Under this view,Hasbrouck v. Childs, 3 Bosw., 105, is an apt illustration, and its facts are very much like those in this case. H. and C. formed a partnership, each contributing $2,000, H. giving his whole time and C. a small part of his time, H. to receive three-fourths of the profits and C. one-fourth; but nothing was said as to losses. There were no profits, but the capital was heavily impaired, only $879.80 being left. It was held that this must be equally divided; that H.'s excess of profits was for extra services and payable only out of the profits, if any (297) were made, and that losses were to be shared equally.
It would be strange if we should hold in this case that there had been a net profit, when the firm had lost half of its capital, which really represented nearly all of its gross returns, having been converted into money by a sale of the manufactured product. The agreement was to divide net profits, and not any part of the capital. But whichever view we take, whether the amount contributed to capital is to be considered as a debt of the firm, or whether if capital is impaired, it is to be regarded as a loss, the ruling of the judge was correct. The defendant has not appealed, but is satisfied with that decision, and the plaintiff cannot complain of it.
But we think the court erred as to the other question. The oral stipulation that defendants would pay the amount of the shortage in the "crops of boxes," if there turned out to be less than thirteen of them, was but a part of the entire contract between the parties, the other part of which, namely, the deeds, was reduced to writing. It did not contradict or vary the written part. Besides, the deed for the land and leasehold and timber boxes, dated 19 November, 1907, recites that it is given in consideration of $100 (and a further consideration)," showing that the whole consideration was not set forth. The referee finds, and the court approved his findings of fact, that the partnership agreement was not in writing and the misunderstanding of the parties grew out of this fact. It is true the deeds for the property were in writing, but what the finding means is that the entire contract between the parties was not written, but a part of it rested in parol. The facts in McGee v. Craven, 106 N.C. 351, were that a tract of land was sold with the understanding between the parties that if there should be a deficiency in the acreage, the grantor would pay back the difference or the value of the deficiency. The deed conveyed 111 acres of land for $900, and not by *Page 238 
the acre. Plaintiff, the grantor, sued on one of the purchase-money notes, representing the balance alleged to be due; defendant counterclaimed upon the ground that there were only 82 1/2 acres in the (298) tract, the difference being $230.85. The jury so found, and this Court affirmed the judgment upon the verdict, and held that there was no contradiction or alteration of the written part of the contract, and that the stipulation as to the deficiency was enforcible, not being in violation of the rule excluding oral evidence to vary or contradict a written agreement. That case is strictly analogous to ours. It is "on all-fours with it," as we sometimes say in order to express an exact similitude. Not only is this case like that one, so far as there are facts common to both, and to the extent that the legal principle involved in both is the same, but the facts of this case more clearly, if anything, exclude the application of the rule of law in regard to parol testimony which is now involved, and present a much stronger case than did those in McGee v. Craven. At any rate, the rule of exclusion does not apply here. A case much like ours is Sherrill v. Hagan, 92 N.C. 345, in which it is held, Justice Ashe delivering the opinion: "Where it is agreed between the vendor and purchaser of a tract of land that the purchaser shall have it surveyed at his expenses, and if it shall be found to contain a smaller number of acres than is called for by the deed, that the vendor shall refund a pro rata part of the purchase money: Held, that such contract is founded on a sufficient consideration, and that it is not within the provisions of the statute of frauds. In such case parol evidence is admissible to establish the contract," citing Manning v.Jones, 44 N.C. 368; Howe v. O'Malley, 1 Minn. 387; Twidy v. Saunderson,31 N.C. 5; Daughtrey v. Boothe, 49 N.C. 87, and Terry v.R. R., 91 N.C. 236. It was said in Colgate v. Latta, 115 N.C. 127, quoting Abbott Tr. Ev., 294: "A written instrument, although it be a contract within the meaning of the rule on this point, does not exclude evidence tending to show the actual transaction, where it appears that the instrument was not intended to be a complete and final settlement of the whole transaction, and the object of the evidence is simply to establish a separate oral agreement in the matter as to which the instrument is silent and which is not contrary to its terms nor to their legal effect." (299) In classifying cases exempt from this rule of evidence, the Court, in Thomas v. Scott, 127 N.Y. 133, said: "The second class embraces those cases which recognize the written instrument as existing and valid, but regard it as incomplete, either obviously or at least possibly, and admit parol evidence, not to contradict or vary, but to complete the entire agreement, of which the writing was only a part." *Page 239 
And in Batterman v. Pierce, 11 Hill, 171, which was an action for purchase of wood, a verbal agreement was made at the time that if anything happened to the wood through plaintiff's means, or by setting fire to his fallow, he would guarantee the purchaser against any loss. The Court held that the evidence was competent, and to the objection that this contravened the rule, said there was "nothing in it." See, also, Currie v. Hawkins,118 N.C. 594; Walton v. Jordan, 65 N.C. 170;Johnson v. R. R., 116 N.C. 926; Kelly v. Oliver, 113 N.C. 442. We said in Typewriter Co. v. Hardware Co., 143 N.C. 97, quoting with approvalEvans v. Freeman, 142 N.C. 61: "Numerous other cases have been decided by this Court in which the application of the same principle has been made to various combinations of facts, all tending, though, to the same general conclusion, that such evidence is competent where it does not conflict with the written part of the agreement and tends to supply its complement or to prove some collateral agreement made at the same time. The other terms of the contract may generally thus be shown where it appears that the writing embraces some, but not all, of the terms."
The subject was considered in Richards v. Hodges, ante, 183, with full citation of authorities, though the facts of that case were not, in all respects, identical with those of this one. Reference is also made to a valuable note to Woodson v. Beck, 31 L. R. Anno. (N.S.), 235, cited in Richards v. Hodges, where there are many authorities collected which sustain our view in this case. One of the cases cited there is Brady v.Henry, 71 Cal. 481 (60 Am. Rep., 543), where a parol agreement made at the time of giving a note, that if the quantity of hay for which it was given, not then known, should fall below the given amount, a credit should be allowed to the extent of the deficiency, and it was held by the Court to be admissible, as not contradicting or varying the (300) writing. Other cases to be found there, and which agree with our decision in Evans v. Freeman, supra, and Typewriter Co. v. HardwareCo., supra, are the following: Hansen v. Yturria, 48 S.W. 797;Bank v. Cook, 125 Iowa 111; Mitchell v. Sellman, 5 Md. 376; InsuranceCo. v. Smucker, 106 Mo. App. 304; Saffer v. Lambert, 111 Ill. App. 410.
In this case it was agreed that if the timber on the land did not cut thirteen crops, the amount of the shortage should be deducted from the price for which the note was given. This comes within the principle of the above authorities, and the judge erred in not submitting the question to the jury. This will be done unless the parties can agree as to the amount, or to some other method of ascertaining it. The case of Walker v. Venters,148 N.C. 388, is not applicable, for there the writing was contradicted or varied, but our case is more like Brown v. Hobbs, *Page 240 147 N.C. 73, which cites, Mitchell v. Foil, 100 N.C. 178, and Spraguev. Bond, 108 N.C. 382, where this Court held the parol agreements for a division of the profits, upon a sale of the land conveyed, not to be within the rule of exclusion, nor within the statute of frauds. The agreement to pay a part of the proceeds or to refund a portion of the price was a part of the consideration upon which the deed was obtained. Brown v. Hobbs,supra; Trowbridge v. Wetherbee, 93 Mass. (11 Allen), 364; Hess v. Fox, 10 Wendell, 436; Sprague v. Bond, supra. These cases are in principle likeRichards v. Hodges, supra, decided at this term.
Assignment of error No. 4 is not taken as required by this Court.Porter v. Lumber Co., post, 396. Besides, it is a general assignment to several distinct rulings of the court, one of which at least, we have decided to be correct. In such a case the assignment of course, must fail, as we held in S. v. English, post, 497. It is the same as if taken to several portions of a charge, it must be good as a whole (Bost v. Bost,87 N.C. 477; Insurance Co. v. Sea, 21 Wall, 158); or as if taken to a mass of evidence, some of which is competent. Barnhardt v. Smith, 86 N.C. 473. In S. v. Ledford, 133 N.C. 722, we held: "The (301) objections are general, and the rule is well settled that such objections will not be entertained if the evidence consists of several distinct parts, some of which are competent and others not. In such a case the objector must specify the ground of the objection, and it must be confined to the incompetent evidence. Unless this is done, he cannot afterwards single out and assign as error the admission of that part of the testimony which was incompetent," citing the cases. Without conclusively determining the question as to what is called the "high boxes," and the refusal of the referee and court to allow it as a part of the profits, as they are embraced in the general assignment, we may say that it appears to be without any real merit.
Some assignments are made to the findings of facts, but we are bound by those of the judge, or, rather, we do not review them in matters of account and certain other cases not necessary now to enumerate. McCullers v.Cheatham, 163 N.C. 61, and authorities there cited.
There was error as to the parol agreement and no error as to other mattes. Costs of this Court to be divided equally.
Modified.
Cited: Sigmon v. Shell, 165 N.C. 585. *Page 241