La Familia Cosmovision, Inc. v. The Inspiration Networks, 2014 NCBC 51.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 1079

LA FAMILIA COSMOVISION, INC.,           )
successor in interest to                )
Production Facilities, LLC,             )
        Plaintiff                 )
                           )
                           )      **OPINION AND ORDER**
        v.                     )    **ON MOTION TO DISMISS**
                           )
THE INSPIRATION NETWORKS and           )
THE INSPIRATIONAL NETWORKS, INC.,      )
        Defendants                )

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after reviewing the Motion, briefs in support of and in opposition to the Motion, arguments of counsel and other appropriate matters of record, CONCLUDES that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons stated herein.

> *Fletcher, Toll & Ray, LLP, by George L. Fletcher, Esq. and Aimee L. Ezzell, Esq. and Wilson & Ratledge, PLLC, by Reginald B. Gillespie, Jr., Esq. for Plaintiff La Familia Cosmovision, Inc.*

> *Nexsen Pruet, PLLC, by Christopher C. Lam, Esq. and Matthew S. DeAntonio, Esq. for Defendants The Inspiration Networks and The Inspirational Networks, Inc.*

McGuire, Judge.

## PROCEDURAL HISTORY

[1]     On March 14, 2013, Plaintiff La Familia Cosmovision, Inc. f/k/a Production Facilities, Inc. ("LFC") filed a Complaint against Defendants The Inspiration Networks and The Inspirational Network, Inc. Plaintiff's action was designated as No. 13 CVS 1079 by the Clerk of Superior Court of New Hanover County. In its Complaint, Plaintiff pursues the following four claims for relief ("Claim(s)"): First Claim for Relief (Declaratory Judgment); Second Claim for Relief (Breach of Contract/Wrongful Termination); Third Claim for Relief (Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-16); and Fourth Claim for Relief (Accounting).

[2]     On March 26, 2013, Defendants filed a Motion to Transfer Venue. On April 17, 2013, venue was transferred to Mecklenburg County by this Court's Order on Motion to Transfer Venue.

[3]     On April 10, 2013, Defendants filed the Motion, seeking dismissal of all Claims, pursuant to Rule 12(b)(6).

[4]     On August 22, 2013, Plaintiff moved to amend its Complaint. On October 25, 2013, this Court granted Plaintiff's Motion for Leave to Amend Complaint, and Plaintiff's Verified Amended Complaint ("Amended Complaint") is deemed to be before the Court.[1] As of the Amended Complaint's filing, LFC now captions itself as "successor in interest to" (rather than "f/k/a") Production Facilities, LLC ("PF").

[5]     The Motion has been fully briefed and argued and is ripe for determination.

## FACTUAL BACKGROUND

Among other things, the Amended Complaint alleges that:

---

[1] The Court therefore decides the Motion as it pertains to the Amended Complaint.

[6]     Plaintiff LFC is a Florida corporation with its principal place of business in Miami, Florida.[2] Plaintiff characterizes itself as a "successor in interest" to PF.[3] LFC was formed by "persons involved" in PF.[4]

[7]     Defendant The Inspirational Network, Inc. ("Inspirational, Inc.") is a North Carolina Corporation with its principal place of business located in Indian Land, South Carolina.[5] Defendant The Inspiration Networks ("Inspiration") "has represented" that it is a North Carolina corporation.[6] Defendants transact substantial business in New Hanover County, North Carolina.[7] Inspiration is "an overarching entity," of which Inspirational, Inc. is a comprising entity.[8]

[8]     On or about May 2, 2005, Inspiration and PF executed a Confidentiality and Non-Disclosure Agreement ("CNDA").[9] Subsequently, on or about June 1, 2005, Inspiration and PF executed a Letter of Intent drafted by the former ("LOI").[10] The LOI delineated the terms of a partnership between PF and Inspiration with the goal of creating a Spanish-language network called "La Familia Cosmovision" ("LFC Network").[11] Despite its majority member's objection to the venture,[12] PF was a party to the CNDA and LOI because Defendants represented that time was of the essence and were unwilling to wait for PF's minority members to form a new entity.[13] To that end, PF's minority members entered into

---

[2] Am. Compl. ¶ 1.
[3] *Id.*
[4] *Id.* ¶ 16.
[5] *Id.* ¶ 3.
[6] *Id.* ¶ 2.
[7] *Id.* ¶¶ 2-3.
[8] *Id.* ¶¶ 9-10.
[9] *Id.* ¶ 14, Ex. A to Am. Compl. ("CNDA").
[10] Am. Compl. ¶ 15; *see* Ex. B to Am. Compl. ("LOI").
[11] Am. Compl. ¶¶ 10, 15.
[12] *Id.* ¶ 11.
[13] *Id.* ¶ 12.

the CNDA and LOI with PF as the named signatory, with the intention of forming a new entity to which the rights and obligations under the LOI would eventually be assigned.[14]

[9] The LOI provided that "Inspiration is an independent contractor." It also provided that "nothing in this agreement shall be construed to constitute a joint venture."[15]

[10] LFC was formed on July 26, 2005.[16] On December 1, 2005, the directors and managers of PF met and "resolved to assign" PF's rights and obligations under the LOI to LFC.[17]

[11] Inspirational, Inc. and LFC executed an Amendment ("First Amendment") to the LOI on or about January 6, 2010.[18] The First Amendment, which was drafted by Inspirational, Inc., laid out the parties' intentions moving forward. It extended the LOI's term and provided for an assessment period along with recurring payment responsibilities on Inspirational, Inc.'s part, in addition to plans for enhancements and further discussions. The First Amendment provided that it "supersede[d] all prior and contemporaneous written and verbal communications and understandings" regarding its subject matter. The First Amendment was signed by Jorge Velasquez as CEO of LFC.[19]

[12] Inspirational, Inc. and PF executed an additional Amendment ("Second Amendment") to the LOI on or about May 5, 2010.[20] The Second Amendment, which was also drafted by Inspirational, Inc., addressed revenue sharing, viewership and sales support, and advertising inventory. The Second Amendment contained an identical superseding

---

[14] *Id.* ¶ 13.
[15] LOI ¶ 17(g).
[16] Am. Compl. ¶ 16.
[17] *Id.* ¶ 17.
[18] Ex. E to Am. Compl.
[19] *Id.*, Am. Compl. ¶ 18.
[20] Ex. F. to Am. Compl.

provision to that of the First Amendment. The Second Amendment was again signed by Jorge Velasquez, this time as CEO of PF.[21]

[13]    Plaintiff further alleges that the LOI and Amendments thereto, along with the parties' course of dealing, correspondence, and Defendants' conduct, evidence the creation of a legal partnership.[22] The LOI reflects an intent to create a partnership in that it pre-allocated losses and provided that the parties would work together to develop material for the Network.[23] The Amendments referred to a "joint undertaking" and contained revenue sharing agreements.[24] Correspondence from Inspirational to LFC repeatedly referred to a partnership between the parties.[25] The parties held themselves out to be partners in the context of discussing a sale of LFC to a third party.[26] Therefore, Plaintiff contends it is entitled to a declaratory judgment under Rule 57 and G.S. § 1-253 *et seq.* declaring that the relationship between Defendants and LFC constitutes a partnership under G.S. § 59-31 *et seq.*[27]

[14]    On November 5, 2013, Defendants terminated the LOI effective December 31, 2013, by mail correspondence ("Termination Notice").[28] The Termination Notice cited the poor quality of LFC's programming as the motivating factor in bringing about the end of the relationship.[29] The Termination Notice purportedly relied on § 1 of the First Amendment as providing authority to terminate the LOI.[30] Plaintiff contends that this reliance was

---

[21] *Id.*, Am. Compl. ¶ 19.
[22] Am. Compl. ¶¶ 23-28.
[23] *Id.* ¶ 25.
[24] *Id.* ¶ 25(c)-(e).
[25] *Id.* ¶ 26.
[26] *Id.* ¶ 27.
[27] *Id.* ¶ 29.
[28] *Id.* ¶ 20, Ex. G to Am. Compl. ("Termination Notice").
[29] *Id.* ¶ 31.
[30] *Id.* ¶ 21.

misplaced, and the LOI's termination sections provide the only applicable termination procedure.[31] Defendants' actions therefore constituted a breach of the LOI.[32]

[15]  Defendants' wrongful and fraudulent termination of their relationship with LFC and subsequent disavowal of the parties' partnership constitute unfair and deceptive acts that affect commerce under Chapter 75 of the North Carolina General Statutes.[33]

[16]  Finally, because Defendants have sole possession of the partnership's books, assets, and records, LFC is entitled to an accounting under G.S. § 59-52.[34]

<u>DISCUSSION</u>

[17]  The Motion seeks dismissal of Plaintiff's Claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Bringing a motion to dismiss under Rule 12(b)(6) allows the moving party to test the legal sufficiency of a complaint. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[18]  The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true and admitted. *Id.* However, conclusions of law or unwarranted deductions of fact are not deemed admitted. *Id.* The facts and permissible inferences set forth in the complaint are to be treated in a light most favorable to the nonmoving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156 (1986). As our Court of Appeals has noted, the "essential question" raised by a Rule 12(b)(6) motion is "whether the complaint, when liberally construed, states a claim upon which relief can be granted on *any* theory." *Barnaby v. Boardman*, 70 N.C. App. 299, 302 (1984), *rev'd on other grounds*, 313 N.C. 565 (1985) (citations omitted).

---

[31] *Id.* ¶¶ 31-32.
[32] *Id.* ¶ 43.
[33] *Id.* ¶¶ 49-51.
[34] *Id.* ¶¶ 57, 61.

[19]   A Rule 12(b)(6) motion should be granted when the complaint, on its face, reveals (a) that no law supports the plaintiff's claim, (b) the absence of facts sufficient to form a viable claim, or (c) some fact which necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

[20]   Documents that are attached to the complaint as exhibits and referenced therein will be considered by the Court for Rule 12(b)(6) purposes. *Woolard v. Davenport*, 166 N.C. App. 129, 133-34 (2004). The Court may also consider records of which it has taken judicial notice. *Wood v. J.P. Stevens & Co.*, 297 N.C. 636, 641 (1979) ("[I]t is clear that judicial notice can be used in rulings on . . . motions to dismiss for failure to state a claim."); *see also* Rule 201(f) of the North Carolina Evidence Code, G.S. § 8C-1 ("Judicial notice may be taken at any stage of the proceeding.").

[21]   Defendants contend that this action should be dismissed in its entirety because Plaintiff lacks standing to bring its Claims against Defendants. In the alternative, Defendants contend that Plaintiff's declaratory judgment Claim (and thus its Claim for an accounting) must fail as a matter of law because Plaintiff fails to allege the indispensable elements of a partnership. Defendants further contend that Inspiration should be dismissed from this action because Plaintiff cannot sue a non-entity or assumed name. Finally, Defendants contend that Plaintiff's G.S. Chapter 75 Claim is subject to dismissal for failure to allege an unfair or deceptive act in or affecting commerce as required by statute.

## Standing

[22]   Defendants contend that LFC lacks standing to bring this action, and that the action therefore merits dismissal in its entirety. Defendants specifically note that LFC was not a party to the LOI and that the LOI by its express terms prohibited any assignment of the LOI without Defendants' written consent. In response, Plaintiff notes that LFC was a

signatory to the First Amendment[35] and stresses the parties' course of dealing in arguing that Defendants either waived their right to object or effectively assented to PF's assignment to LFC.

[23] It has long been established that dismissal is proper in an action grounded in contract where the plaintiff fails to allege privity of contract between the parties or, alternatively, that the plaintiff is a direct or intended beneficiary of a contract. *See Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 8-9 (2001) (citing *Chandler v. Jones*, 173 N.C. 427, 429 (1917)). In defining privity, our Court of Appeals has emphasized a "derivative interest" that is "founded on" or "grow[s] out of . . . contract, connection, or bond of union between parties." *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 15 (1996) (quoting Black's Law Dictionary 1199 (6th ed. 1990)), *disc. review denied*, 345 N.C. 344 (1997).

[24] The Florida records attached as Exhibit A to Defendants' Motion[36] unambiguously establish that LFC and PF were wholly separate legal entities, rather than different names associated with the same entity. As such, LFC's initial characterization of itself as "formerly known as" PF was improper. Similarly, Plaintiff's subsequent, conclusory characterization of itself as "successor in interest to" PF is largely irrelevant on its face. Moreover, even if PF intended to effectively assign its rights and obligations under the LOI to LFC, the LOI clearly prohibited such an assignment without Inspiration's written

---

[35] In the First Amendment, the parties are identified as "The Inspirational Network, Inc." and "Production Facilities, LLC now La Familia Cosmovision INC ('Production Facilities')." The First Amendment is signed by Jorge Velasquez on behalf of "LA FAMILIA COSMOVISION INC". Am. Compl. ¶ 18, Ex. E.

[36] The Court, FINDING that the attachments are not subject to reasonable dispute, TAKES JUDICIAL NOTICE of the public records filed by Defendants as Exhibit A to the Motion. *See* Rule 201, North Carolina Evidence Code. Plaintiff's argument that Defendants' "introduction of matters and evidence outside of the Complaint" is impermissible or converts the Motion into a Rule 56 summary judgment motion is without merit.

consent. For that reason, it is difficult for the Court to affirmatively characterize any of Defendants' actions as some form of waiver or assent to the purported assignment.

[25]    Nevertheless, the First Amendment undeniably establishes a contractual connection of some form between LFC and Defendants, limited – and perhaps inadvertent or mistaken – as it may be. Given that LFC is a signatory to a contractual amendment between the parties, it is difficult for Defendants to prevail on the notion that LFC has no place at all in this action. Moreover, Defendants have not proffered any convincing argument as to why the Court should simply disregard LFC's presence in the First Amendment.

[26]    To dismiss the action entirely at this stage would plainly qualify as going "too fast too soon." *Sutton v. Duke*, 277 N.C. at 108. To that end, the Court's holding here is limited to the conclusion that Defendants have not met their burden of persuasion and therefore the Court cannot rule conclusively on this issue as a matter of law at this stage. Accordingly, as to the issue of LFC's standing in this action, the Motion should be DENIED.

<u>Claims Against The Inspiration Networks</u>

[27]    Defendants contend that The Inspiration Networks must be dismissed from this action in order to "clean up" the pleadings.[37] Defendants concede that The Inspirational Network, Inc. is the proper Defendant, and it does not appear that dismissal of The Inspiration Networks will result in Plaintiff losing any substantive right to recover. Defendants argue that "The Inspiration Networks" is an assumed name rather than a legal entity and offer as evidence a Certificate of Assumed Name filed with the Wake County Register of Deeds.[38] Plaintiff contends in response that dismissal would be "premature" at this time, and that Inspirational, Inc., did not file a Certificate of Assumed Name in

[37] Mem. Law. Supp. Defs.' Mot. Dismiss ("Defendants' Brief") at 9.
[38] The Court, FINDING that the attachments are not subject to reasonable dispute, hereby TAKES JUDICIAL NOTICE of the public records filed by Defendants as Exhibit B to the Motion. *See* Rule 201, North Carolina Evidence Code.

Mecklenburg County where the parties transacted business as required under statute.[39] Plaintiff further argues that Defendants have prevented clarification of this issue by their successful Motion to Stay Discovery,[40] despite Defendants' purported offer to stipulate that Inspirational, Inc., is the actual and proper party to the LOI.[41]

[28] Defendants cite to *Rollins v. Junior Miller Roofing Co.*, 55 N.C. App. 158 (1981), for the proposition that an action must be brought against "an existing legal entity." *Rollins*, 55 N.C. App. at 163 (citing G.S. § 1-75.2). Defendants argue that the use of an assumed name does not create a separate legal entity, and therefore there remains only one entity that may be sued. Defendants essentially ask this Court to hold that although one may sue a corporation under its assumed name, one cannot maintain an action against *both* a corporation and its assumed name.[42]

[29] This appears to be an issue of first impression in North Carolina. The rule posited by Defendants is logically sound. For the same reason that it would be nonsensical to name the same entity or individual twice as a party to an action, a plaintiff cannot maintain an action against both a legal entity and its assumed name.

[30] The record before this Court clearly indicates that "The Inspiration Networks" is an assumed name of Inspirational, Inc.[43] Therefore, Plaintiff cannot maintain an action against both Inspiration and Inspirational, Inc., notwithstanding Defendants' alleged failure to properly file a certificate of assumed name in Mecklenburg County.

---

[39] Br. Pl. LFC Resp. Defs.' Mot. Dismiss ("Plaintiff's Brief") at 6.
[40] *Id.*
[41] *See* Defs.' Br. at 9.
[42] Defs.' Br. at 8-9.
[43] *See* Ex. B to Mot. Dismiss.

[31]  Accordingly, as to Defendant Inspiration, the Motion should be GRANTED. From the entry of this Order forward, the sole defendant in this action will be "The Inspirational Network, Inc. d/b/a The Inspiration Networks."

Declaratory Judgment and Accounting Claims

[32]  Plaintiff's First Claim for Relief seeks a declaratory judgment under Rule 57 and G.S. § 1-253 *et seq.* "determining and declaring that the relationship between [Defendants] and LFC constitutes a partnership" under the North Carolina Uniform Partnership Act, G.S. § 59-31 *et seq.* Defendants' Motion seeks dismissal of Plaintiff's Declaratory Judgment Claim because LFC "fails to allege the 'indispensible' elements of a partnership."

[33]  The presence of a real or existing controversy between adverse parties is an essential requirement in a declaratory judgment action. *Adams v. N.C. Dep't of Natural & Econ. Res.*, 295 N.C. 683, 704 (1978). Therefore, when the record reveals the lack of a basis for declaratory relief, a Rule 12(b)(6) motion may be granted against a declaratory judgment claim. *Kirkman v. Kirkman*, 42 N.C. App. 173, 176 (1979). Simply stated, a declaratory judgment claim is subject to dismissal where the relevant pleadings do not contain allegations upon which the sought declaratory relief may be granted.

[34]  The North Carolina Uniform Partnership Act, codified at Chapter 59 of our General Statutes, provides the basis for the "legal concept" of partnership. To that end, the Act defines a partnership as "an association of two or more persons to carry on as co-owners of a business for profit." G.S. § 59-36(1). Our Supreme Court has elaborated:

> To make a partnership, two or more persons should combine their property, effects, labor, or skill in a common business or venture, and under an agreement to share the profits and losses in equal or specified proportions, and constituting each member an agent of the others in matters appertaining to the partnership and within the scope of its business.

*Johnson v. Gill*, 235 N.C. 40, 44-45 (1952) (internal quotations and citations omitted).

[35]     A "*de facto* partnership may be found by examination of a [*sic*] parties' conduct, which shows a voluntary association of partners." *Best Cartage, Inc. v. Stonewall Packaging, LLC*, __ N.C. App. __, __, 727 S.E.2d 291, 299 (2012). Put another way, a partnership "may be inferred" where the "circumstances demonstrate a meeting of the minds with respect to the material terms of the partnership agreement." *Compton v. Kirby*, 157 N.C. App. 1, 11 (2003) (citations omitted). Courts have considered a variety of circumstances as indicative of a partnership, including, among other things, the filing of a joint tax return, establishment of a partnership bank account, obtaining state licensing as a partnership, and capital contribution by members of the alleged partnership. *In re Brokers, Inc.*, 363 B.R. 458, 469 (M.D.N.C. 2007) (citations omitted).

[36]     Under North Carolina law, there are also two "indispensable" requirements that *must* be met for a legal partnership to exist. *Best Cartage*, __ N.C. App. at __, 727 S.E.2d at 299 (quoting *Wilder v. Hobson*, 101 N.C. App. 199, 202 (1990)). The first requirement is "sharing of any actual profits." *Wilder*, 101 N.C. App. at 202 (citing *Sturm v. Goss*, 90 N.C. App. 326 (1988)).[44] The second "indispensable requisite" is that of "co-ownership of the business." *McGurk v. Moore,* 234 N.C. 248, 252 (1951) (citations omitted). Failure to properly plead allegations supporting the existence of one or both of these elements is fatal to a claim for declaratory judgment of an implied partnership.

a.     Profit Sharing.

[37]     As noted earlier, partnerships arise only where parties agree to "share the profits and losses in equal or specified proportions." *Johnson*, 235 N.C. at 45. G.S. § 59-37

---

[44] *But see* 59A Am. Jur. 2d *Partnership* § 149 (2014) ("Although the sharing of profits is prima facie evidence of a partnership, its absence does not automatically preclude the existence of a partnership relationship."). The Court of Appeals' repeated use of the word "indispensable" with regard to this element strongly suggests that this is not the law in North Carolina.

distinguishes between "receipt . . . of a share of the profits of a business," which may be *prima facie* evidence of partnership, and "the sharing of gross returns," which does not carry such a presumption. G.S. § 59-37(3)-(4). More than a century ago, our Supreme Court touched on this distinction in *Buie v. Kennedy*, 164 N.C. 290 (1913), noting that "it is said . . . that an agreement to share gross returns does not create a partnership, for the reason that such an agreement is inconsistent with the joint ownership of the profits." *Id.* at 294.

[38]  The LOI provided that "[e]ach party shall be solely responsible for all expenses incurred in connection with the performance of their [*sic*] respective obligations under this LOI and any subsequently executed agreement."[45] It further provided that Defendants would be entitled to all subscriber fees and PF would be entitled to keep all advertising revenue.[46] Plaintiff's contention that this arrangement constituted a "pre-allocated"[47] sharing of losses, and thus an effective sharing of profit, is without merit.

[39]  On the other hand, the Second Amendment to the LOI contains a revenue sharing provision under which Defendants agreed to pay PF half of any subscription fees from subscribers added after the Amendment's effective date "over and above" one million subscribers, less certain costs "incurred by [Defendants]."[48] In essence, Defendants were entitled to all revenue from subscription fees up to the one millionth subscriber. Beyond that point, Plaintiff and Defendants shared the "net license fees,"[49] or profit, derived from subscribers exceeding one million in number. Plaintiff posits that this arrangement satisfies the required element of profit sharing associated with a partnership.

---

[45] LOI ¶ 8.
[46] *Id.* ¶ 8(a)-8(b).
[47] Am. Compl. ¶ 25(b).
[48] Second Am. ¶ 4.
[49] *Id.*

[40]   It is undeniably true that Plaintiff and Inspirational, Inc. "shared profits" in some form within the ordinary and literal meaning of that term, even if this incremental revenue share was ancillary to the main arrangement. The question remains, however, whether this *type* of setup constitutes "profit sharing" as that term is used in the context of partnership law. This involves two related inquiries: First, does North Carolina law require sharing of both profits *and* losses for an arrangement to meet this requisite? Similarly, is the requirement satisfied where the share of profits simply flows from one alleged partner to another rather than into the partnership and out to the partners?

[41]   The North Carolina case law is not clear on this specific issue. At a very basic level, our appellate Courts have referred to this parameter with interchangeable language. *Compare Gorham v. Cotton*, 174 N.C. 727, 729 (1914) (partnership entails sharing of "the profits *and* losses in equal or specified proportions") (emphasis added), *with Zickgraf Hardwood Co. v. Seay*, 60 N.C. App. 128, 133 (1982) (partnership involves "agreement to share the profits *or* losses") (emphasis added).

[42]   Nevertheless, "[t]he general rule under the Uniform Partnership Act, and other law, is that an agreement to share losses as well as profits is essential to the existence of a partnership." 59A Am. Jur. 2d *Partnership* § 155 (2014); *see also Eagan v. Gory*, 374 Fed. Appx. 335, 339 (3d Cir. 2010) ("The obligation to share losses 'is one of the most important indicia of a partnership'") (quoting *Yonadi v. Commissioner*, 21 F.3d 1292, 1297 (3d Cir. 1994)); *True v. Hi-Plains Elevator Machinery, Inc.*, 577 P.2d 991 (Wyo. 1978) (absence of a "mutual interest" to share "in the profits derived from the venture and the losses sustained in its operation" is "conclusive evidence that a partnership . . . does not exist"); *Gutierrez v. Yancey*, 650 S.W.2d 169 (Tex. App. 1983) ("A failure by the parties to agree to share losses precludes the existence of the joint venture."); *Cornell v. Redrow*, 60 N.J. Eq. 251 (1900). *But see Ingram v. Deere*, 288 S.W.3d 886, 896 (Tex. 2009) ("[Texas

Revised Partnership Act] recognizes that sharing of losses may be indicative of a partnership arrangement but states that such an arrangement is not necessary to create a partnership.").[50]

[43] Similarly, in *Wilkinson v. Coppersmith*, 218 N.C. 173 (1940), our Supreme Court considered a contractual arrangement involving a defendant who provided equipment, buildings, and lumber to the plaintiff, who was charged with "salvaging, preparing for sale and selling the property," with each party to bear its own expenses. *Id.* at 173-74. When the property was sold, the defendant was to be "reimbursed for the purchase price and all other expenses," with the remaining profit to be divided equally. *Id.* at 174. The Court observed that "[t]he obligation for the purchase price of the property was to be that of the defendant alone, and in the event the venture resulted in loss, the loss was to be borne solely by defendant." *Id.* The Court held that this relationship did not create a partnership, noting that "[w]hile an agreement to share profits as such is one of the tests of partnership, an agreement to receive part of the profits for services rendered, as a means only of ascertaining the compensation, does not create a partnership." *Id. See also Rothrock v. Naylor*, 223 N.C. 782, 787-88 (1944) (finding existence of owner-independent contract relationship rather than partnership, noting that one party bore no risk of any possible loss).

[44] Under the arrangement at issue in this matter, LFC did not share in any risk of loss as to the profit-sharing provision, and the setup between the parties bears strong similarities to the arrangements in *Wilkinson* and *Rothrock* that our Supreme Court found to be indicative of an agreement between contracting parties. The profit-splitting arrangement between the parties in the matter *sub judice* bears the hallmarks of a

---

[50] Unlike the applicable North Carolina statutes, the relevant Texas statute explicitly provides that "[a]n agreement by the owners of a business to share losses is not necessary to create a partnership." Tex. Bus. Orgs. Code § 152.052; *see also* Tex. Rev. Civ. Stat. Ann. art. 6132b-2.03(c) (2009).

compensation measure rather than the type of financial relationship that is contemplated by the relevant statutory authority and case law as indicative of a legal partnership.

### b. Co-ownership of Property

[45] Moreover, Plaintiff's allegations do not support the requisite finding of co-ownership between the parties. Plaintiff contends that their allegations sufficiently plead the elements for a partnership based on "revenue sharing, contribution of money and effort, and evidence of a shared understanding of engagement in a partnership."[51] The profit and revenue sharing arrangement between the parties is not directly relevant to a co-ownership of the actual business and, as discussed above, fails to carry persuasive value as to the creation of a partnership. Similarly, the LOI is devoid of any provision involving the contribution of capital to any business by Plaintiff.

[46] Plaintiff's final contention that communications between the parties, as well as Defendants' communications in the presence of third parties, supports the existence of a partnership also must fail. The various verbal communications and representations referenced in the Amended Complaint,[52] including casual references to a "partnership" between the parties, are best viewed as circumstantial evidence that cannot overcome the explicit contractual language specifying Defendants as independent contractors[53] rather than legal partners.[54]

---

[51] Pl.'s Br. at 9.

[52] Am. Compl. ¶¶ 26-27.

[53] LOI ¶ 17(g).

[54] To the extent Plaintiff seeks to rely on a partnership by estoppel-like theory even tangentially, that argument must fail. See G.S. § 59-46, Lawyers Paralegal Training Programs, LLC v. Guilford Coll., 737 S.E.2d 191 (2013) (unpublished) ("Plaintiffs' reliance on the doctrine of partnership by estoppel is misplaced because it speaks to a partnership's liability to a third-party. Here, plaintiffs' claim is not based on any representations to a third-party. Therefore, the doctrine of partnership by estoppel is not applicable to the facts of this case.").

[47]    Moreover, there is no evidence that the parties ever combined assets or co-owned partnership property or any common legal entity. Under the LOI's unambiguous terms, Defendants were the sole owners of the name "La Familia Cosmovision," with PF receiving a license to use the name.[55]

    c.    Other Factors and Conclusion.

[48]    Of further note in this matter is the absence of a variety of traditional indicia supporting the existence of a partnership. For example, there is no allegation that the parties ever filed a partnership tax return or established partnership bank accounts. *See Reddington v. Thomas*, 45 N.C. App. 236 (1980). Finally, the LOI explicitly provides, in a subparagraph captioned "Relationship of the Parties," that "Inspiration is an independent contractor and that nothing in this agreement shall be construed to create a joint venture . . . ."[56]

[49]    In sum, the Amended Complaint fails to allege facts supporting a finding of two prerequisites for the establishment of a partnership under North Carolina law. Plaintiff's current attempt to substantively re-write the LOI based on an ancillary profit-sharing agreement and references to a partnership in certain ex-post communications must fail. Accordingly, as to Plaintiff's First Claim for Relief, the Motion should be GRANTED.

[50]    It is axiomatic that a claim for accounting can only survive a motion to dismiss when the allegations state a claim for a partnership between the parties. *See* G.S. § 59-52, *Dean v. Manus Homes, Inc.*, 143 N.C. App. 549, 553 (2001). The Court has already found

---

[55] LOI ¶ 3.
[56] LOI ¶ 17(g). Plaintiff correctly notes that "[e]ven when there is *no explicit partnership agreement*, the conduct and declarations of principles may give rise to an implied agreement to form a partnership." Pl.'s Br. at 8. (internal quotations and citations omitted) (emphasis added). Yet this is not merely a case involving the *lack* of any explicit agreement between the parties – rather, there is a clear contractual agreement with provisions that are explicitly and directly contrary to Plaintiff's position.

such allegations lacking. Accordingly, as to Plaintiff's Fourth Claim for Relief, the Motion should be GRANTED.

### Breach of Contract Claim

[51]  Defendants contend that Plaintiff's Second Claim for Relief should be dismissed because Plaintiff "has no contractual privity with Inspiration."[57] As noted above in the discussion concerning Defendants' Motion as it pertains to Plaintiff's standing, this statement is not entirely accurate. Because LFC is a signatory to a contractual amendment between the parties,[58] the Court cannot grant the Motion at this stage as to Plaintiff's breach of contract Claim. Accordingly, as to Plaintiff's Second Claim for Relief, the Motion should be DENIED.

### Unfair and Deceptive Trade Practices Claim

[52]  Defendants contend that Plaintiff's Third Claim for Relief should be dismissed because it fails to state an actionable claim under G.S. § 75-1.1, *et seq.* ("UDTPA"). A UDTPA claim is subject to dismissal at the 12(b)(6) stage if the Amended Complaint fails to properly allege "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing, Inc. v. Pollard*, 101 N.C. App. 450, 460-61 (1991); *see also* G.S. § 75-1.1. Defendants contend that Plaintiff has alleged neither an unfair or deceptive act nor any actions in or affecting commerce on Defendants' part that could give rise to liability under G.S. Chapter 75.

[53]  Plaintiff's allegations in support of its UDTPA Claim center on the alleged partnership that existed between the parties. In short, Plaintiff contends that Defendants "bait[ed]" Plaintiff into "investment of time and financial resources into a supposed 'joint

---

[57] Defs.' Br. at 16.
[58] *See* First Am.

venture' . . . only to eventually deny the existence of a partnership and to unjustly assume the bounty of its rewards."[59] Even if the disavowal of the existence of a partnership under these circumstances could constitute an unfair or deceptive act under the UDTPA, the Court has already found that the Amended Complaint fails to adequately allege the basis for a legal partnership.

[54]    Therefore, Plaintiff cannot sustain a UDTPA claim against Defendants for what appears to be Defendants' proper and good faith denial of the existence of a partnership between the parties. Moreover, the pleadings fail to establish any wrongdoing by Defendants that would have been "in or affecting commerce" as required for the UDTPA's application. Accordingly, as to Plaintiff's Third Claim for Relief, the Motion should be GRANTED.

## CONCLUSION

NOW THEREFORE, based upon the foregoing, it is hereby ORDERED that:

[55]    To the extent the Motion seeks to dismiss the action in its entirety based on Plaintiff's lack of standing, the Motion is DENIED.

[56]    To the extent the Motion seeks dismissal of Defendant The Inspiration Networks from this action, the Motion is GRANTED.

   a.    Defendant The Inspiration Networks is DISMISSED from this action.

   b.    As of the entry of this order, the sole remaining defendant in this action will be "The Inspirational Network, Inc. d/b/a The Inspiration Networks."

[57]    Defendants' Motion to Dismiss Plaintiff's First Claim for Relief is GRANTED.

[58]    Defendants' Motion to Dismiss Plaintiff's Second Claim for Relief is DENIED.

[59]    Defendants' Motion to Dismiss Plaintiff's Third Claim for Relief is GRANTED.

---

[59] Pl.'s Br. at 10.

[60]    Defendants' Motion to Dismiss Plaintiff's Fourth Claim for Relief is GRANTED.

This the 20th day of October, 2014.